UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, 1155 21st N.W., Washington, D.C. 20581,<br><br>Plaintiff,<br><br>v.<br><br>TRADE EXCHANGE NETWORK LIMITED, First Floor 12, Office 4, Main St., Lucan, Co., Dublin, Ireland, and INTRADE THE PREDICTION MARKET LIMITED, First Floor 12, Office 4, Main St., Lucan, Co., Dublin, Ireland,<br><br>Defendants. | Civil Action No. |

COMPLAINT FOR PERMANENT INJUNCTION,
CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF

Plaintiff U.S. Commodity Futures Trading Commission ("Commission" or "CFTC"), by

its attorneys, alleges as follows:

## I. SUMMARY

1.      In 2005 the Commission filed an administrative action against Trade Exchange

Network, Ltd. ("TEN") for violating the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* (2002)

(the "Act" or "CEA"), and the Commission's Regulations, 17 C.F.R. §§ 1.1 *et seq.* (2004)

("Regulation"), by offering for trading to U.S. customers, confirming the execution of , and

soliciting and accepting orders from U.S. customers for the trading of, commodity option

contracts ("options" or "binary options") prohibited by the Commission's ban on trading off-

exchange options.  TEN agreed to settle the matter simultaneously with the Commission's filing

and consented to the entry of an administrative order (the "2005 Order") finding that, from at least January 2003 through May 2005, TEN, through its affiliated websites including www.intrade.com, violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulation 32.11, 17 C.F.R. § 32.11 (2004), by offering for trading to U.S. customers, and soliciting and accepting orders from U.S. customers for the trading of, options not excepted or exempted from the Commission's ban on trading options off-exchange.

2.      The 2005 Order contained a non-exclusive list of the binary options offered for trading by TEN on its trading websites that were of particular concern to the Commission at that time, including a Daily Crude Oil contract, a Gold Futures Year End 2005 contract, a Light Sweet Crude Oil Futures Year End contract, an Intraday Euro versus U.S. Dollar Rate contract, a U.S. Dollar versus Yen Cash Rate contract, and a Scheduled Federal Open Market Committee Rate Announcements contract.

3.      As part of its settlement, TEN agreed to cease and desist from further violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulation 32.11, 17 U.S.C. § 32.11 (2004), and to abide by certain undertakings, including, among others, agreeing to inform TEN's U.S. customers "what contracts are unavailable to them to trade" on the TEN trading websites "by utilizing a pop-up notice that will appear when [U.S.] customers attempt to enter orders on those contracts." TEN also agreed to cooperate with the Commission in any future investigation relating to the subject matter of the 2005 Order.

4.      Notwithstanding the 2005 Order, during the period from September 2007 to June 25, 2012 (the "Relevant Period"), TEN, by and through its employees and agents, used its affiliated website www.intrade.com, to continue to offer for trading to U.S. customers, and to

2

solicit and accept orders (and funds) from U.S. customers for the trading of options off-
exchange, in violation of:

- the 2005 Order, and thus in violation of Section 6c of the Act, and the Act as
  amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act of
  2010, Pub. L. No. 111-203, Title VII (the Wall Street Transparency and
  Accountability Act of 2010 (the "Act, as amended by the Dodd-Frank Act")) to be
  codified at 7 U.S.C. § 13a-1;

- Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006); and

- Regulation 32.11, 17 C.F.R. § 32.11 (2011).

These included binary options betting on the future prices of gold and crude oil, and future

changes in the U.S. unemployment rate and U.S. gross domestic product figures.  TEN also

failed to abide by certain undertakings set forth in the 2005 Order, including its obligation to

inform U.S. customers which contracts offered on the www.intrade.com website they were

prohibited from trading  through "pop-up" notices or other indications on its websites informing

users that it was unlawful for U.S. customers to trade certain of the commodity and financial

option contracts then offered on the websites, and its obligation to provide the Commission with

timely, written notice of TEN's intent to change the person it had designated to receive written

requests arising from the 2005 Order, and to designate a new person located in the U.S. once the

prior designee withdrew as counsel for TEN.

5.      In addition, during the Relevant Period, Intrade the Prediction Market Limited

("Intrade"), a company owned and operated by TEN, by and through it employees and agents,

offered for trading to U.S. customers binary options contacts off-exchange, confirmed the

execution of those trades, and solicited and accepted orders (and funds) through the

www.intrade.com website from U.S. customers for the trading of binary option contracts off-exchange, including binary options betting on the future prices of gold and crude oil, and changes in the U.S. unemployment rate and U.S. gross domestic product figures.  In order for these binary options to be legal, Intrade was required, pursuant to Section 5d(a) and (b) of the Act, 7 U.S.C. § 7a-3(a) and (b) (2006) (which sections continue in effect through December 31, 2011 by orders of the Commission (*see Second Amendment to July 14, 2011 Order of Swap Regulation*, 77 FR 41260, 41265 (July 13, 2011)), to restrict the offering, soliciting and accepting orders (and funds) to trade these contracts to "eligible contract participants" ("ECPs"), as defined in Section 1a(12)(xi) of the Act, 7 U.S.C. § 1a(12)(xi), as amended (and renumbered) by the Dodd-Frank Act, to be codified at 7 U.S.C. § 1a(18)(xi)).  Because Intrade through its website did not restrict itself to offering, soliciting and accepting orders (and funds) for trading binary options to ECPs, Intrade violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006), and Regulation 32.11, 17 C.F.R. § 32.11 (2011).

6.       Finally, during the Relevant Period, TEN and Intrade violated Section 9(a)(3) of the Act, 17 U.S.C. § 13(a)(3) (2006), by knowingly filing "Annual Certification" forms with the Commission, which forms were required to be filed pursuant to Regulation 36.2(c)(3), 17 C.F.R. § 36.2(c)(3) (2011), falsely representing that trading on the Intrade website was "limited to eligible contract participants," as required by the Act.  Contrary to these representations, Intrade offered, solicited and accepted orders (and funds) for trading binary options to U.S. customers who did not qualify as ECPs, as defined in the Act.

7.       By virtue of this conduct and further conduct described below, Defendants have engaged, are engaged, or are about to engage in acts and practices in violations of the Act, and/or the Act as amended by the Dodd-Frank Act and/or the Regulations.

8.    Accordingly, pursuant to Section 6c of the Act, and the Act as amended by the Dodd-Frank Act, to be codified at 7 U.S.C. § 13a-1, the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the 2005 Order, the Act, the Act as amended by the Dodd-Frank Act, and the Regulations, and to further enjoin Defendants from engaging in certain commodity options-related activity in connection with U.S. customers, including through the www.intrade.com website.

9.    In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans in connection with U.S. customers, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

10.    Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II. JURISDICTION AND VENUE

11.    The Court has jurisdiction over this action pursuant to Section 6c of the Act, and the Act as amended by the Dodd-Frank Act, to be codified at 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order promulgated thereunder, and to enforce compliance with the Act or any rule, regulation or order thereunder.

12.    Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-l(e) (2006), because the acts or practices in violation of the Act, the Act as amended by the

Dodd-Frank Act, and the Regulations have occurred, are occurring, or are about to occur within this District, among other places.

## III. PARTIES

13. Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, the Act as Amended by the Dodd-Frank Act and the Regulations promulgated thereunder. The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

14. Defendant **Trade Exchange Network Limited** is an Irish company with its principal place of business located in Dublin, Ireland. TEN has owned Intrade and has operated the www.intrade.com website at least since 2001. By at least 2004, TEN was a network of online trading websites based in Dublin, Ireland consisting of the following: www.intrade.com; www.Tradesports.com; www.TradebetX.com; and www.Wallstreetsports.com (collectively, the "affiliated websites"). While TEN has divested itself of certain of these trading websites, the website www.intrade.com continues to offer binary option contracts for trading to U.S. and foreign customers through its "prediction" markets. TEN has never been designated as a contract market by the Commission and is not a bona fide foreign board of trade pursuant to Section 4(a) and (b) of the Act, as amended by the Dodd-Frank Act, to be codified at 7 U.S.C. §§ 6(a) and (b). TEN has never filed a notice of its intent to operate TEN as an exempt board of trade ("EBOT") pursuant to Section 5d of the Act, 7 U.S.C. § 7a-3 (2006).

15. Defendant **Intrade the Prediction Market Limited** is an Irish company with its principal place of business in Dublin, Ireland. Intrade's website, www.intrade.com, is an online "prediction market" trading website that allows customers to trade binary option contracts.

Intrade has never been designated as a contract market by the Commission, and is not a bona fide

foreign board of trade pursuant to Section 4(a) and (b) of the Act, as amended by the Dodd-Frank

Act, to be codified at 7 U.S.C. § 6(a) and (b).  In September 2005, TEN on Intrade's behalf filed

with the Commission a notice of its intent to operate as an EBOT in reliance on the exemption

set forth in Section 5d of the Act, U.S.C. § 7a-3 (2006), which allows Intrade to market and sell

futures and/or option contracts to U.S. customers who are ECPs.

16.     On information and belief, during the Relevant Period TEN and Intrade operated

as a single business which was managed by a common group of officers, directors and

employees, and which conducted its operations from a common place of business.

## IV. FACTS

**A.     The www.intrade.com Trading Website**

17.     The website www.intrade.com is an online "prediction market" trading website

operated jointly by TEN and Intrade.  Through the website, customers buy or sell binary options

which allow them to predict ("yes" or "no") whether a specific future event will occur.  For

example, customers may predict whether or not the price of gold will be greater than $1,500 per

ounce, or whether or not the U.S. unemployment rate will be greater than 9%, by a certain date in

the future.

18.     Customers who predict that an event will occur buy shares on the

www.intrade.com trading website, while those who predict an event will not occur sell shares on

the trading website.  Upon expiration of the contract, the settlement pay-off per share is $0 or

$10: the contract settles at $10 if the event occurs and settles at $0 if the event does not occur.

According to the website, "[b]ecause a market will always settle at either $0.00 or $10.00, all

shares are bought or sold at prices somewhere in between."  Customers may also sell out of the

contracts prior to contract expiration, realizing any profit or loss at that time.  According to the website, "For example:  You buy shares at a price of $6.00. The next day the price has increased to $7.50. You can sell these shares and take a profit of $1.50 per share."

19.   During the Relevant Period, the www.intrade.com trading website offered for purchase to U.S. customers binary options in multiple markets, including, among others, contracts in the following commodities:  Gold (*e.g.*, "February 2011 (G12) Gold Futures to close on or above 1000 on 30 Dec 2011"), Currencies (*e.g.*, "Euro/U.S. Dollar to close on or above 1.0000 on 30 Dec 2011"), U.S. economic numbers (*e.g.*, "U.S. will go into recession during 2011"), Banking (*e.g.*, "75 or more U.S. banks to fail during 2011"), and War (*e.g.,* "U.S. to conduct overt military action against North Korea before midnight ET on 31 Dec 2011").

20.   During the Relevant Period, U.S. customers opened trading accounts on the www.intrade.com trading website and traded binary options.  The options traded included, but were not limited to, predictions about future changes in the price of gold, future changes in the U.S. unemployment rate and U.S. gross domestic product figures, and predictions about the occurrence of specific acts of war.

21.   U.S. customers initiated and executed these options trades on the www.intrade.com trading website through computer terminals located in the U.S., which trades Defendants confirmed the execution of via the www.intrade.com website, emails and other communications to U.S. customers.  To fund their Intrade trading accounts and make the trades, U.S. customers transferred funds from the U.S. by wire transfers and check to foreign bank accounts maintained in the name of Trade Exchange Network, Ltd. and Intrade The Prediction Market, Ltd.

22.     According to representations on the www.intrade.com website, the Defendants purportedly do not take the other side of the transactions, but rather match orders placed by participants on the website.

23.     The options offered on the www.intrade.com trading website to U.S. customers were not excepted or exempted from the Commission's ban on trading options off-exchange.

24.     During the Relevant Period, the www.intrade.com website contained no "pop-up" blocks or other mechanism to prevent U.S. customers from trading on the website.  Nor did the website consistently contain warnings alerting U.S. customers that they were not legally permitted to trade certain of the contracts listed on the website, including the contracts identified in paragraph 19 above.

25.     During the Relevant Period, U.S. users of the www.intrade.com website were not required to submit any information about their net worth, assets or prior trading experience to open a trading account on the website, nor were U.S. users of the website required to provide any such information to trade binary options on the website.  Also during the Relevant Period, TEN offered, solicited and accepted orders (and funds) for commodity and financial option contracts from U.S. customers without inquiring into or confirming such customers' net worth or prior trading history.

**B.     The 2005 Order Against TEN**

26.     In 2005 the Commission filed an administrative action against TEN for violating the Act and the Regulations by offering for trading certain binary option contracts to U.S. customers, and soliciting and accepting orders from U.S. customers for the trading of options. Specifically, the Commission charged TEN with violating Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Commission Regulation 32.11, 17 U.S.C. § 32.11 (2004), by offering on its

affiliated websites for trading to U.S. customers binary options not excepted or exempted from

the Commission's ban on trading options off-exchange.  TEN consented to the entry of the 2005

Order, which included findings and imposed remedial sanctions against TEN based on the

Commission's charges, simultaneously with the filing of the Commission's administrative

action.

27.     Among other sanctions, the 2005 Order required TEN to cease and desist from

violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulation 32.11, 17 U.S.C.

§ 32.11 (2004), resulting from TEN's offering for trading to U.S. customers, and soliciting and

accepting orders  from U.S. customers for the trading of  commodity options not excepted or

exempted from the Commission's options ban.  The 2005 Order specifically listed as examples

of such prohibited option contracts the Daily Crude Oil contract, Gold Futures Year End 2005

contract, Light Sweet Crude Oil Futures Year End contract, Intraday Euro versus U.S. Dollar

Rate contract, the U.S. Dollar versus Yen Cash Rate contract, and the Scheduled Federal Open

Market Committee Rate Announcements contract.

28.     The 2005 Order also required TEN to comply with certain undertakings and

imposed certain cooperation and record keeping obligations on TEN, including the following:

a.     "TEN shall inform customers of the United States and/or its territories of what

contracts are available to them for trade by utilizing a pop-up notice that will appear

when such customers attempt to enter orders on those contracts";

b.     "TEN shall continue to cooperate fully and expeditiously with the Commission,

including the [Commission's] Division [of Enforcement], in any investigation, civil

litigation, or administrative matter related to the subject matter of this proceeding or any

current or future Commission investigation related thereto," including producing

documents and making available for administrative testimony or interviews "any current
(as of the time of the request) officer, director, employee, or agent of TEN, regardless of
the employee's location and at such location that conserves Commission travel
resources"; and

c.      "TEN designates Michael Philipp, Esq. . . . to receive all requests for information
pursuant to this undertaking.  Should [TEN] seek to change the designated person to
receive such requests, notice shall be given in writing to the Division of such intention
fourteen (14) days before it occurs.  Any person designated to receive such request shall
be located in the United States."

## C.      TEN's Failure to Comply With the 2005 Order

29.     In or about December 2011 the Commission's staff began to inquire into TEN's
compliance with the 2005 Order.  As part of its inquiry, the Commission's staff contacted current
and former TEN and Intrade customers to gather information concerning their trading on the
www.intrade.com website.  The Commission's staff also contacted Michael Philipp, Esq., the
attorney designated in the 2005 Order to receive "all requests for information" from the
Commission in connection with TEN's administrative settlement, and requested from him
documents and information relevant to the Commission's inquiry.

30.     The information gathered by the Commission's staff during this inquiry
established that, during the Relevant Period, TEN failed to comply with the 2005 Order by
continuing to offer for trading to U.S. customers, and to solicit and accept orders (and funds)
from U.S. customers to trade, certain commodity and financial option contracts that were subject
to the cease and desist provisions of the 2005 Order.  Specifically, after the entry of the 2005
Order TEN offered for trading to U.S. customers, and solicited and accepted orders (and funds)

from U.S. customers to trade, contracts related to the price of gold, the U.S. unemployment rate, and the U.S. gross domestic product, among other options contracts.

31.     TEN also failed to comply with the 2005 Order by failing, during the Relevant Period, to provide "pop-up" notices or other indications on its websites informing users that it was unlawful for U.S. customers to trade certain of the commodity and financial option contracts then offered on the websites.  Specifically, after entry of the 2005 Order, U.S. customers trading contracts related to movements in the price of gold, changes in the U.S. unemployment rate, and/or changes in U.S. gross domestic product figures, among other options contracts, were not provided with the notice required by the 2005 Order.

32.     On February 2, 2012, Mr. Philipp left the law firm with which he had been affiliated during his representation of TEN, Winston & Strawn, LLP, and at the same time withdrew as counsel for TEN.  On February 16, 2012, attorneys at Winston & Strawn, LLP, notified the Commission that the firm also would withdraw from its representation of TEN effective the following day, February 17, 2012.  TEN, however, never provided the Commission with timely, written notice of its intent to change its designee under the 2005 Order; nor did it designate a new person located in the U.S. once the prior designee withdrew as its counsel.

33.     On March 8, 2012, the Commission sent written notification to TEN of its violations of the 2005 Order, including those referenced in paragraphs 30 to 32 above, and further notified TEN that if it had "not cured its violations of the 2005 Order . . . on or before March 23, 2012, the [Commission] w[ould] take all necessary steps to enforce the 2005 Order and compel TEN's compliance."  To date, TEN has failed to cure, or attempt to cure, its violations of the 2005 Order.

**D.    Defendants' False Statements to the Commission on Intrade's EBOT Certifications**

34.    Section 5d(a) of the Act, 7 U.S.C. § 7(d)(a), provides, in relevant part, that a board of trade that meets certain requirements enumerated elsewhere in Section 5 "may operate as an exempt board of trade on [the Commission's] receipt from the board of trade of a notice . . . that [it] elects to operate as an exempt board of trade." Section 5d(a) of the Act, 7 U.S.C. § 7a-3(a) (2006). A board of trade seeking to operate as an EBOT under this provision must insure, among other facts, that contracts traded on the board of trade "are entered into only between persons that are eligible contract participants [ECPs] at the time at which the persons enter into the contract . . . ." 7 U.S.C. § 5d(b)(2) (2006), as amended by the Dodd-Frank Act.

35.    As relevant to the Commission's Complaint, Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12)(A)(xi) (2006), as amended (and renumbered) in the Act by the Dodd-Frank Act, to be codified at 7 U.S.C. § 1a(18)(xi), defines an "eligible contract participant" as an individual who has "total assets" or "amounts invested on a discretionary basis" in excess of: (a) $10 million; or (b) $5 million and who enters the transaction to manage the risk associated with an asset owned or a liability incurred, or reasonably likely to be owned or incurred.

36.    In addition to these substantive eligibility requirements, a board of trade seeking EBOT status must comply with certain record filing requirements. Specifically, pursuant to Regulation 36.2(c)(3), 17 C.F.R. § 36.2(c)(3) (2011), a "board of trade operating under Section 5d of the Act as an exempt board of trade shall file with the Commission annually . . . a notice that includes: (i) a statement that it continues to operate under the exemption; and (ii) a certification that the information contained in the previous Notification of Operation as an Exempt Board of Trade is still correct." 17 C.F.R. § 36.2(c)(3) (2011).

37.     For the years 2008 and 2009, Intrade filed an Annual Certification with the Commission pursuant to its obligations under Regulation 36.2(c)(3), 17 C.F.R. § 36.2(c)(3) (2011).  The annual filing was made on CFTC Form 5, entitled "Exempt Board of Trade ('EBOT') Annual Certification," which requires parties seeking to maintain EBOT status to state, among other information, whether the board of trade filing the CFTC Form 5 has limited the trading on or through the facilities of the board of trade to ECPs, as required by Section 5d(b)(2) of the Act, 7 U.S.C. § 7(d)(b)(2) (2006), as amended by the Dodd-Frank Act.

38.     In each of the CFTC Form 5 Annual Certifications Intrade filed in 2009 (for the year 2008) and in 2010 (for the year 2009), Intrade represented to the Commission that trading on the www.intrade.com website was "limited to eligible contract participants," as required by the Act.  Contrary to these representations, however, during the Relevant Period, which encompasses the period during which Intrade submitted its CFTC Form 5 Annual Certifications to the Commission, Intrade offered for trading to U.S. customers, and solicited and accepted orders (and funds) for the trading of binary options by U.S. customers, who did not qualify as ECPs as defined in the Act.

## V.  COUNT ONE

### VIOLATIONS OF SECTION 4c(b) OF THE ACT AND REGULATION 32.11
### (7 U.S.C. § 6c(b) (2006) AND 17 C.F.R. § 32.11 (2011))
### (Illegal Off-Exchange Options Trading)

#### (Against Defendants Trade Exchange Network Limited and Intrade the Prediction Market Limited)

39.     Paragraphs 1 through 38 are re-alleged and incorporated herein by reference.

40.     Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006), makes it unlawful to

offer to enter into, enter into or confirm the execution of, any transaction involving any commodity regulated under the Act which is of the character of, or

is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty", contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe.

41.     Regulation 32.11(a) and (b), 17 C.F.R. § 32.11(a) and (b), provide, in relevant part, that "it shall be unlawful . . . for any person to solicit or accept orders for, or to accept money, securities or property in connection with, the purchase or sale of any commodity option, or to supervise any person or persons so engaged," unless the commodity option transaction is exempt under Regulation 32.4, or is "conducted on or subject to the rules of a contract market or a foreign broad of trade in accordance with the provisions of section 4c of the Act and any rule, regulation or order promulgated thereunder." 17 C.F.R. § 32.11(a) and (b).

42.     As further described at paragraphs 19 through 25 above, during the Relevant Period TEN violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006), and Section 32.11 of the Regulations, 17 C.F.R. § 32.11 (2011), by offering for trading to U.S. customers, confirming the execution of trades, and soliciting and accepting orders (and funds) from U.S. customers to trade, binary option contracts not excepted or exempted from the Commission's ban on trading options off-exchange.

43.     As further described at paragraphs 19 through 25 above, during the Relevant Period Intrade violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006), and Section 32.11 of the Regulations, 17 C.F.R. § 32.11 (2011), by offering for trading to U.S. customers, confirming the execution of trades, and soliciting and accepting orders (and funds) from non-ECP U.S. customers to trade, binary option contracts not excepted or exempted from the Commission's ban on trading options off-exchange.

44.     Defendants are not exempt from the requirements of Section 4c(b), 7 U.S.C. § 6c(b) (2006), pursuant to Regulation 32.4(a) or (b).  17 C.F.R. § 32.4(a) and (b) (2011).

45.     The acts of TEN's and Intrade's agents and employees undertaken on TEN's and Intrade's behalf occurred within the scope of their employment with TEN and Intrade.  TEN and Intrade are therefore liable for their agents' and employees' acts, omissions or failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Section 1.2 of the Commission's Regulations, 17 C.F.R. § 1.2 (2011).

46.     Each and every act by TEN and Intrade in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006), and Regulation 32.11, 17 C.F.R. § 32.11 (2011), including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006), and Regulation 32.11, 17 C.F.R. § 32.11 (2011).

## VI. <u>COUNT TWO</u>

### <u>VIOLATION OF THE COMMISSION'S 2005 ORDER AND SECTION 6c OF THE ACT, AND THE ACT AS AMENDED BY THE DODD-FRANK ACT (TO BE CODIFIED AT 7 U.S.C. § 13a)</u>

#### *(Against Defendant Trade Exchange Network Limited)*

47.     Paragraphs 1 through 38 are realleged and incorporated herein by reference.

48.     On September 29, 2005, the Commission entered the 2005 Order which required TEN to cease and desist from violating Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulation 32.11, 17 C.F.R. § 32.11 (2004), and imposed other obligations on TEN as further described at paragraphs 26 through 28 above.

49.     Following entry of the 2005 Order and during the Relevant Period, TEN violated the 2005 Order by engaging in the conduct described in paragraphs 29 through 32 above, by (1) continuing to offer for trading to U.S. customers, confirm the execution of trades, and solicit and

accept orders (and funds) from U.S. customers to trade, commodity and financial option

contracts that were subject to the cease and desist provisions of the 2005 Order; (2) failing to

provide "pop-up" notices or other indications on its websites informing users that it was unlawful

for U.S. customers to trade certain of the commodity and financial option contracts then offered

on the websites; and (3) failing to provide the Commission with timely, written notice of TEN's

intent to change the person it had designated to receive written requests arising from the 2005

Order, and to designate a new person located in the U.S. once the prior designee withdrew as

counsel for TEN.

50.     The acts of TEN's agents and employees undertaken on TEN's behalf occurred

within the scope of their employment with TEN.  TEN is therefore liable for its agents' and

employees' acts, omissions or failures  pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C.

§ 2(a)(1)(B) (2006), and Section 1.2 of the Commission's Regulations, 17 C.F.R. § 1.2 (2011).

51.     Each violation of the Commission's 2005 Order and Section 6c of the Act, as

amended by the Dodd Frank Act, including but not limited to those specifically alleged herein,

constitutes a separate and distinct violation of the 2005 Order and of Section 6c of the Act, and

the Act as amended by Dodd-Frank Act, to be codified at 7 U.S.C. § 13a.

## VII.  COUNT THREE

### VIOLATIONS OF SECTION 9(a)(3) OF THE ACT
### (7 U.S.C. § 13(a)(3) (2006))
### (False Statements)

*(Against Defendants Trade Exchange Network Limited
and Intrade the Prediction Market Limited)*

52.     Paragraphs 1 through 38 are re-alleged and incorporated herein by reference.

53.     Section 9(a)(3) of the Act, 7 U.S.C. § 13(a)(3) (2006), makes it unlawful for

[a]ny person knowingly to make, or cause to be made, any statement in any application, report, or document required to be filed under this Act or any rule or regulation thereunder . . . or by any registered entity or registered futures association in connection with an application for membership, or participation therein or to become associated with a member thereof, which statement was false or misleading with respect to any material fact, or knowingly to omit any material fact required to be stated therein or necessary to make the statements therein not misleading.

54.     Regulation 36.2(c)(3), 17 C.F.R. § 36.2(c)(3) (2011), provides that an EBOT "shall file with the Commission annually . . . a notice that includes: (i) a statement that it continues to operate under the [EBOT] exemption; and (ii) a certification that the information contained in the previous Notification of Operation as an Exempt Board of Trade is still correct." 17 C.F.R. § 36.2(c)(3) (2011).

55.     Defendants violated Section 9(a)(3) of the Act, 7 U.S.C. § 13(a)(3) (2006), by the conduct described above at paragraphs 34 through 38, including knowingly filing CFTC Form 5 Annual Certifications with the Commission in 2009 (for the year 2008) and in 2010 (for the year 2009) which falsely represented that trading on the Intrade website was "limited to eligible contract participants," as required by the Act.  Contrary to these representations in its CFTC Form 5 Annual Certifications, Intrade offered for trading to U.S. customers, and solicited and accepted orders from U.S. customers for the trading of, binary options, which customers did not qualify as ECPs under the Act and the Act as amended by the Dodd-Frank Act.

56.     The acts of TEN's and Intrade's agents and employees undertaken on TEN's and Intrade's behalf occurred within the scope of their employment with TEN and Intrade.  TEN and Intrade are therefore liable for their agents' and employees' acts, omission or failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Section 1.2 of the Commission's Regulations, 17 C.F.R. § 1.2 (2011).

57.     Each and every act by TEN and Intrade in violation of Section 9(a)(3) of the Act,

7 U.S.C. § 13(a)(3) (2006), including but not limited to those specifically alleged herein, is

alleged as a separate and distinct violation of Section 9(a)(3) of the Act, 7 U.S.C. § 13(a)(3)

(2006).

### VIII.  RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by

Section 6c of the Act, and the Act as amended by the Dodd-Frank Act, to be codified at 7 U.S.C.

§ 13a-1, and pursuant to its own equitable powers, enter:

A.     An order finding that TEN violated: the 2005 Order, and thereby violated Section

6c of the Act, as amended by the Dodd-Frank Act, to be codified 7 U.S.C. §13a-1;

Sections 4c(b) and 9(a)(3) of the Act, 7 U.S.C. §§ 6c(b) and 13(a)(3) (2006); and

Regulation 32.11, 17 C.F.R. § 32.11 (2011);

B.     An order finding that Intrade violated Sections 4c(b) and 9(a)(3) of the Act, 7

U.S.C. §§ 6c(b) and 13(a)(3) (2006), and Regulation 32.11, 17 C.F.R. § 32.11 (2011);

C.     An order of permanent injunction prohibiting TEN, and any other person or entity

associated with it, from engaging in conduct in violation of Sections 4c(b) and 9(a)(3) of

the Act, 7 U.S.C. §§ 6c(b) and 13(a)(3) (2006); Sections 2(e) and 6c of the Act, as

amended by the Dodd-Frank Act, to be codified at 7 U.S.C. §§ 2(e) and 13a-1; and

Regulation 32, as amended, to be codified at  17 C.F.R. § 32 (2011);

D.     An order of permanent injunction prohibiting Intrade, and any other person or

entity associated with it, from engaging in conduct in violation of Section 4c(b) and

9(a)(3) of the Act, §§ 6c(b) and 13(a)(3) (2006); Section 2(e) of the Act, as amended by

the Dodd-Frank Act, to be codified at 7 U.S.C. § 2(e); and Regulation 32, as amended, to

be codified at  17 C.F.R. § 32 (2011);

E.    An order of permanent injunction prohibiting Defendants, and any other person or

entity associated with them or their website(s), from operating the website(s) while in

violation of Sections 4c(b) and 9(a)(3) of the Act, 7 U.S.C. §§ 6c(b) and 13(a)(3) (2006);

Sections 2(e) and 6c of the Act, as amended by the Dodd-Frank Act, to be codified at 7

U.S.C. §§ 2(e) and 13a-1; and Regulation 32, as amended, to be codified at 17 C.F.R. §

32;

F.    An order of permanent injunction prohibiting TEN, and any other person or entity

associated with them or their website(s), from operating the website(s) while in violation

of the 2005 Order, and Section 6c of the Act, as amended by the Dodd-Frank Act, to be

codified at 7 U.S.C. §13a-1;

G.    An order of permanent injunction prohibiting TEN and Intrade, and any successor

of either company, from, directly or indirectly, offering to, soliciting, or accepting any

orders or funds from any person located in the U.S. (or its territories), through any

website or by any other means, for the purpose of purchasing or selling any commodity

futures, options on commodity futures, commodity options (as that term is defined in

Regulation 1.3 (hh), 17 C.F.R. § 1.3 (hh) (2011)), foreign currency (as described in

Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and

2(c)(2)(C)(i)), security futures products and/or swap (as that term is defined in Section

1a(47)(A), as amended by the Dodd-Frank Act, to be codified at 7 U.S.C. § 1a(47)(A)),

in violation of the Act; the Act, as amended by the Dodd-Frank Act; and the

Regulations;

H.      Enter an order requiring Defendants and any successors to either company, to

disgorge to any officer appointed or directed by the Court all benefits received including,

but not limited to, salaries, commissions, loans, fees, revenues, and trading profits

derived, directly or indirectly, from acts or practices that constitute violations of the Act,

the Act as amended by the Dodd-Frank Act, and the Regulations, including pre- and post-

judgment interest;

I.      Enter an order directing Defendants and any successors to either company, to

rescind, pursuant to such procedures as the Court may order, all contracts and

agreements, whether implied or express, entered into between them and any of the U.S.

customers (and customers within U.S. territories) whose funds were received by them as

a result of the acts and practices which constituted violations of the Act, the Act as

amended by Dodd-Frank, and the Regulations as described herein;

J.      Enter an order requiring Defendants to pay civil monetary penalties under the Act,

to be assessed by the Court, in amounts of not more than the higher of: (1) triple the

monetary gain to Defendants for each violation of the Act, the Act as amended by the

Dodd-Frank Act, and the Regulations; or (2) $130,000 for each violation committed

between October 23, 2004 and October 22, 2008, and $140,000 for each violation

committed on or after October 23, 2008;

K.    Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

L.    Enter an Order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Dated:  November 26, 2012         Respectfully submitted,

ATTORNEYS FOR PLAINTIFF
U.S. COMMODITY FUTURES
TRADING COMMISSION
1155 21st Street NW
Washington, D.C.  20581

Kathleen Banar
(202) 418-5335
(202) 418-5987 facsimile
*kbanar@cftc.gov*
(Ill. Bar No.:  6200597)

David S. Slovick
(202) 418-5451
(202) 418-5987 facsimile
*dslovick@cftc.gov*
(Ill. Bar No.:  6257290)