UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> TRADE EXCHANGE NETWORK LIMITED, an Irish company, and INTRADE THE PREDICTION MARKET LIMITED, an Irish company, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 12-1902 (RCL)

**MOTION AND MEMORANDUM IN SUPPORT OF AN ORDER (1) TO SHOW CAUSE WHY DEFENDANTS ARE NOT IN CIVIL CONTEMPT AND (2) FOR SANCTIONS AGAINST DEFENDANTS PURSUANT TO FED. R. CIV. P. 37(b)(2)(A)**

## I.    INTRODUCTION

Notwithstanding that the Court denied Defendants Trade Exchange Network Limited's ("TEN") and/or Intrade the Prediction Market Limited's ("Intrade") (collectively, "Defendants") Motion for a Protective Order, granted Plaintiff Commodity Futures Trading Commission's ("Commission" or "CFTC") Motion to Compel and ordered that Defendants "***must produce all documents responsive*** to CFTC's requests for production and also ***complete their responses to CFTC's interrogatories***" (*see* Dkt. No. 33, Memorandum Opinion and Order (the "Order") at 15 (emphasis added)) by July 14, 2014 (the "Deadline"), the evidence clearly and convincingly shows that Defendants failed to produce all responsive documents and complete their interrogatory responses by the Deadline, failed to request from the Court any relief for not complying with the Court's Order either before or after the Deadline or for reconsideration of the

Order, and, most problematic, have failed to produce all documents responsive to the Commission's requests for production even though it is now almost four months since the Deadline, and more than four months since the Court ordered their production by granting the Commission's Motion to Compel.  Consequently, the Commission requests that the Court issue an order requiring that Defendants show cause why they are not in civil contempt of the Court's Order.  Further, as Defendants have failed to obey the Order, the Commission requests that the Court issue an order for appropriate sanctions pursuant to Rule 37(b)(A) of the Federal Rules of Civil Procedure.

## II.      FACTS

### A.      The Court's Order and Deadline

On June 24, 2014, the Court ordered that Defendants had to produce all documents responsive to the Commission's requests for production and also complete their responses to the Commission's interrogatories within twenty (20) days of the entry of the Order or no later than July 14, 2014.[1]  (Order at 15.)[2]  The Court also ordered that the Defendants had to produce Ronald Bernstein ("Bernstein"), a Director and the Chief Executive Officer ("CEO") of TEN and Intrade, for a deposition within ten days of the entry of the Order regarding the location of

---

[1]      The Court separately ordered that all discovery would close 30 days after Defendants had "fully complied with their written discovery obligations including make a complete document production" as well as "respond fully to interrogatories."  (Dkt. No. 32, Order Granting Plaintiff's Motion to Lift Stay and Revise Discovery and Deposition Schedules.)

[2]      The Defendants had been on notice of the Commission's requests for the production of documents and interrogatories that were the subject of the Court's June 24, 2014 Order for over one year, as they were issued by the Commission to the Defendants on August 21, **2013**.  (Dkt. No. 25, at Exhibits ("Exs.") 2-5 thereto.)

documents and witnesses. (*Id*.)[3]

**B.  Defendants' Supplemental Responses and Failures to Meet the Deadline or to Seek Relief from the Order**

On July 14, 2014, Defendants produced supplemental written responses to the Commission's interrogatories and document requests, as well as some documents in hard copy and electronic form.  (*See* July 14, 2014 e-mail from Jeff Hamlin to David Slovick and Kathleen Banar, Ex. 1 hereto.)  With respect to their supplemental interrogatory responses, Defendants did not identify any U.S. bank accounts in their responses to Interrogatory No. 8,[4] did not provide telephone contact information in response to Interrogatory No. 7,[5] and, despite the Order requiring that TEN "provide further clarification as to why it had no customers during the relevant period if it truly had none," (Order at 4), continued to state that TEN had "no [U.S.] customers during the Relevant Period" in response to Interrogatory No. 6[6] and that TEN had no documents relating to U.S. customers in response to Document Request No. 1 without further clarification.[7]  Concerning the documents, Defendants produced approximately 2,400 pages of

---

[3]  In accordance with the Order, on July 7, 2014, the Commission deposed Mr. Bernstein on the location of documents and witnesses, who, among other things, testified that he believed the Defendants' documents, including hard copies of documents, electronic files stored on computer hard drives and/or financial records responsive to the Commission's requests were located at Defendants' office and storage facility located in Lucan, Ireland, as well as possibly in a barn owned by the mother of John Delaney, the former CEO of TEN and Intrade who is deceased (the "Delaney Barn").

[4]  Interrogatory No. 8, which was directed to each of the Defendants, requested the Defendants to "Identify all bank accounts and all other financial accounts maintained" by the Defendants "whether such account is located in the United States or in any other country or locations."  (*See* TEN's Supplemental Responses to Plaintiff's First Set of Interrogatories, Ex. 2 hereto, at Interrogatory No. 8; Intrade's Supplemental Responses to Plaintiff's First Set of Interrogatories, Ex. 3 hereto, at Interrogatory No. 8.)

[5]  *See* Exs. 2 and 3 at Interrogatory No. 7.

[6]  *See* Ex. 2 at Interrogatory No. 6.

[7]  *See* TEN's Supplemental Responses to Plaintiff's First Request for the Production of Documents, Ex. 4 hereto, at Request No. 1.

Bates labeled documents, correspondence and service tickets from one mbox file[8] that held e-mail messages associated with customer communications[9] to and/or from *info@intrade.com* and *support@intrade.com* e-mail addresses (the "Help Desk Mbox"), and access to Defendants' customer database.[10]  Importantly, as of the Deadline, Defendants had not produced all documents responsive to the Commission's requests for production, including but not limited to all responsive electronically stored information ("ESI") in Defendants' possession, custody and control such as intercompany e-mails from custodians with responsive information, or all responsive bank and financial records, or completed their responses to the Commission's interrogatories as required by the Order.  Defendants further had failed (1) to request from the Court any relief, including reconsideration, for not complying with the Court's Order, and (2) to explain either to the Court or the Commission the reasons that they had failed to comply with the Court's Order.

**C.    The Parties Have a Meet-and-Confer Conference About Defendants' Production Failures and Interrogatory Deficiencies**

On July 31, 2014, approximately two weeks after the Deadline for Defendants to fully respond to the Commission's discovery requests, the Commission conducted a meet-and-confer conference with Defendants and Mr. Bernstein to discuss the outstanding discovery that

---

[8]    "Mbox" is a generic term for a family of related file formats used for holding collections of electronic mail messages.  *See http://en.wikipedia.org/wiki/Mbox*.

[9]    The communications contained in the mbox were to and/or from both U.S. and non-U.S. customers and concerned all contracts traded on Defendants' trading platform even though (1) the Commission had requested only communications with U.S. customers, and (2) the Commission only sought communications that concerned the contracts at issue in the Complaint. *See* n. 16, *infra*.

[10]    Subsequently, on July 24, 2014, the Commission learned from its technical staff that the Help Desk Mbox that Defendants had produced contained malware such that it could not be reviewed, and, accordingly, alerted Defendants.  (*See* August 7, 2014 letter from Kathleen Banar to David Deitch, Ex. 5 hereto, at 1, summarizing, among other things, that the Help Desk Mbox contained malware.)

Defendants still had to produce as required by the Order.  During that call, among other things, Mr. Bernstein confirmed that Defendants had not reviewed the e-mails contained in the Help Desk Mbox file for responsiveness to the Commission's requests and had not segregated spam or trash e-mails from the file.  Mr. Bernstein also confirmed that Defendants had not searched any intercompany e-mails for documents responsive to the requests and that Defendants had not produced all responsive financial documents to the requests[11] but told the Commission's attorneys that he had made a request to the banks and had not heard back from them.[12]  (*See* Ex. 5, which summarizes Defendants' discovery failures discussed during the meet-and-confer.)

**D.     The Commission's First Letter About Defendants' Production Failures and Interrogatory Deficiencies**

On August 7, 2014, the Commission sent a letter to Defendants concerning the issues discussed during the July 31st meet and confer.  (*See* Ex. 5.)  Among other things, they again alerted Defendants of their failures to search for ESI such as intercompany e-mails responsive to the Commission's requests and to produce a clean Help Desk Mbox file that did not contain malware.[13]  *See* n. 10, *supra*.  The Commission also informed Defendants that their failure, as confirmed by Mr. Bernstein during the July 31st meet and confer, to "review the approximately 140,000 e-mails contained in the [Help Desk Mbox file] for responsiveness to the Commissions' request, but instead produced everything contained in that file regardless of" responsiveness,

---

[11]     *See* Ex. 4 at Request No. 14 as well as Intrade's Supplemental Responses to Plaintiff's First Request for the Production of Documents, Ex. 6 hereto, at Request No. 14 (which requests include all "documents sufficient to show the current location of funds invested by United States persons or entities, whether such f[u]nds are locate in the United States or elsewhere.")

[12]     The Commission further asked Mr. Bernstein whether Defendants had searched the Delaney Barn or Defendants' Lucan office and storage facility for responsive documents.  *See* n. 3, *supra*; *see also* Ex. 5 at 2.  Defendants stated that they would determine if searches of those areas had been conducted.  *See* Ex. 5 at 2.

[13]     Later that day, Defendants reproduced the Help Desk Mbox file purportedly without the malware.

including spam and trash e-mails, violated the Federal Rules of Civil Procedure.[14]  Further, the

Commission alerted Defendants that despite the Court's Order, they had not produced (1) a

single webpage of the Defendants' website, which would be responsive to the Commission's

Request for Production Nos. 3 and 13, or (2) all financial documents, which would be responsive

to Request for Production Nos. 4 and 14.  (Ex. 5 at 2.)   In addition, the Commission again

inquired whether the Defendants had searched for responsive documents at the Delaney Barn, the

Lucan storage facility, or on the "three to four computers [Bernstein] testified were in the

companies' Lucan office when he visited that office in December 2012."  (*Id.*; n. 12, *supra*.)

Because the Deadline was well passed and it had been six weeks since the Court issued the

Order, the Commission required that Defendants produce "all outstanding documents forthwith

on a rolling basis but no later than [] August 13, 2014."[15]  (*Id.*)

On August 14, 2014, one month after the Deadline and approaching two months since the

Order, Defendants sent a response to the letter in which they contended, among other things, that

their production of the Help Desk Mbox file complied with Rule 34(b)(2)(E) of the Federal

Rules, even though the file may contain large amounts of unresponsive information and that they

had not segregated spam or trash e-mails from the file, as they had "produced all customer

communications as they are kept in the regular

---

[14]    Indeed, the Commission informed Defendants that "Rule 34 of the Federal Rules of Civil
Procedure does not permit the responding party to bury responsive documents within a large
volume of irrelevant and non-responsive documents" as Defendants had done.  *See* n. 9, *supra,*
and n. 16, *infra*.

[15]    That same day, Defendants stated that they had located responsive documents as well as
computer hard drives that they believed contained responsive information at their storage facility
in Lucan.

course of business."[16]  (*See* August 14, 2014 letter from Jeff Hamlin to Kathleen Banar, Ex. 7 hereto, at 1-2.)  They also stated that they supposedly were searching "all" intercompany e-mails for responsive documents, that all responsive documents would be produced by August 31, 2014, and that they would be producing mbox files for "all other managers and customer support employees including Carl Wolfenden, Sheena Hurley, John Delaney, Geraldine Arnold, Dan Laffan and Patrick Caulfield."[17]  Defendants further claimed that Defendants were searching for documents potentially responsive to Requests Nos. 3 and 13 including Intrade's web pages and attached a report from Defendants' software version control system that supposedly identified all text changes to the website and stated "[i]f CFTC would like to see specific pages, please identify those pages by date and [Defendants] will produce them as requested."[18]  They also claimed that Defendants were searching for additional bank documents responsive to Requests

---

[16]      While Defendants "acknowledge[d] that the rule prohibits a producing party from attempting to hide responsive information in a sea of nonresponsive data," they contended that they "ha[d] not done that here." (*See* Ex. 7 at 2.)  But, the facts show that is precisely what they have done here.  Specifically, as the Commission had narrowed the requested communications with U.S. customers solely to the contracts at issue in the Complaint (*see* Order at 5, "the CFTC and [D]efendants have met and conferred about this request [reflecting communications between Defendants and U.S. customers], and [] [D]efendants are well aware that the CFTC seeks only those documents related to the contracts at issue in its complaint"), most of the e-mail messages in the Help Desk Mbox file were non-responsive to the Commission's requests since they were primarily communications about contracts not at issue in the Complaint.

[17]      Subsequently, on August 18, 2014, Defendants clarified that they were pulling all intercompany e-mails for these six individuals (the "Individual Mbox files") but, like they did with the Help Desk Mbox, that they were not reviewing those files for responsiveness.  Rather, they "w[ould] be running searches to confirm general date ranges and spot-checking for relevance."  (*See* August 18, 2014 e-mail from Jeff Hamlin to James Deacon and David Slovick, Ex. 8 hereto.)  Importantly, Defendants did not state that they would be searching other ESI for responsive information including the intercompany e-mails of and/or producing mbox files for other individuals who had information responsive to the Commission's requests, such as Mr. Bernstein.

[18]      Thereafter, on August 28, 2014, the Commission requested that Defendants provide all the web pages identified in the report.  In response, on September 4, 2014, Defendants provided a DVD that contained a file labeled CMS table export.csv and two folders labeled (i) revisions, and (ii) Database schemas in Excel.

Nos. 4 and 14 but further stated that, contrary to Mr. Bernstein's statements during the July 31st

meet-and-confer conference, "[Defendants] *ha[d] not* requested records from any banks."

(Emphasis added.)  (*See* Ex. 7 at 2.)  They finally stated that although they had located

responsive documents and computers at the Lucan storage facility, they had been unable to

locate responsive documents at either the Delaney Barn or the Defendants' Lucan office.[19]

**E.      Defendants' Production of Damaged Hard Drives and Infected Mbox Files**

On August 18, 2014, Defendants confirmed that they recently located a stack of hard-

copy documents and eleven (11) hard drives that they "believe[d] contain[ed] responsive

information" at their storage facility.  (*See* Ex. 8 and n. 15 *supra*)  Thereafter, they produced the

documents, which contained approximately 2,500 pages of some but not all responsive financial

records for Defendants, and hard-drives to the Commission on August 22, and 28, 2014,

respectively, for the Commission to image.  The day after producing the drives, the Commission

informed Defendants in writing that certain of the drives as well as sectors of other drives were

damaged such that they could not be imaged and reviewed by the Commission.  That same day

Defendants produced the six Individual Mbox files.  However, these files, like the previously

produced Help Desk Mbox file (*see* n. 10, *supra*), contained malware such that the Commission

could not review the e-mails contained in the files.

**F.      The Commission's Second Letter About Defendants' Discovery Failures and
         Interrogatory Deficiencies**

On September 8, 2014, the Commission sent Defendants another letter regarding their

failures to fully respond to the Commission's discovery requests including, among other things,

the following:

---

[19]      The Defendants stated that "documents thought to be located in the Delaney Barn cannot
be located, and no employee knows what happened to them."  (*See* Ex. 7 at 3.)

- That Defendants' production of e-mails to date was wholly deficient as, among other things, (1) the e-mails were not reviewed for responsiveness, (2) Defendants' reproduced Help Desk Mbox file still contained a few instances of malware, and (3) the six Individual Mbox files also contained malware;[20]

- That Defendants still had not provided an explanation concerning TEN's contention that it purportedly had no US customers during the Relevant Period; and

- That Defendants still had not provided all telephone contact information in response to Interrogatory No. 7.

(*See* September 8, 2014 letter from Kathleen Banar to Jeff Hamlin, Ex. 9 hereto.)  The

Commission also inquired about the following:

- Whether Defendants could obtain images of the damaged hard drives and sectors, which Defendants believed contained responsive information, from their agent, KPMG, who had previously imaged those drives at the direction of Defendants;[21]

- Whether Defendants' production as to Request Nos. 3 and 13 concerning web pages was complete or whether they were still searching for responsive documents;

- Whether Defendants' production as to Request Nos. 4 and 14 concerning bank records and the location of U.S. customer funds was complete, whether they were still searching for responsive documents, and whether they had made a request to their banks to secure those records; and

- Whether Defendants had gone to the Delaney Barn to search for records.

 (*See id.*)

On September 15, 2014, two months after the Deadline, Defendants sent a response in

which, among other things, they again claimed that under the Federal Rules of Civil Procedure

they did not have to review their e-mails for responsiveness and that they would reproduce the

---

[20]    Of course, Defendants production was further deficient as they had not search all of their ESI for documents responsive to the Commission's requests.

[21]    The Commission's September 8th letter also provided a list of the computer hard-drives that could not be imaged at all, as well as a list of those hard drives containing sectors that could not be imaged.  (*See* Ex. 9 at 2-3.)

six Individual Mbox files without malware by September 19, 2014.[22]  (*See* September 14, 2014

letter from Jeff Hamlin to Kathleen Banar, Ex. 10 hereto, at 1-4.)  Defendants also claimed that

they had requested that KPMG send them the images for the damaged hard drives and sectors by

September 30, 2014 (*see id.* at 4) and that they had not physically searched the Delaney Barn but

requested that the Mr. Delaney's estate produce to them all business records located by that same

date.  (*See id.* at 5.)  As to Requests Nos. 3 and 13 concerning web pages, Defendants claimed

that they had conducted additional searches for those documents as promised in their August 14

letter, that they had produced those documents located on September 4th (*see* n. 18, *supra*), and

that should they receive any documents responsive to these requests from Mr. Delany's estate,

they would supplement their production and/or confirm that their production as to those requests

was complete.  (*See* Ex. 10 at 5.)  As to Request Nos. 4 and 14 concerning bank records and the

location of U.S. customer funds, Defendants claimed that on that same day, September 15th, they

had at last requested financial records for all responsive accounts that Defendants held with each

institution from September 2007 to the present and would supplement their production by

September 30, 2014.[23]

---

[22]     On that date, Defendants again reproduced the six Individual Mbox files after removing
the malware.  However, subsequently on September 23, 2014, Defendants advised the
Commission that they would need to re-run the reproduction of the six Individual Mbox files due
to an error.  Thereafter, on September 24, 2014, Defendants again reproduced the Individual
Mbox files.  As before Defendants did not state that they had searched all of their ESI for
responsive documents including the intercompany e-mails of and/or would produce the mbox
files for other individuals who had information responsive to the Commission's requests such as
Mr. Bernstein.

[23]     Subsequently, on September 30, 2014, Defendants did not supplement their production
and provide all financial records responsive to the Commission's requests.  Defendants,
however, did finally supplement to a certain degree their responses to Interrogatory No. 7 and
provided telephone contact information for two of the individuals that they had previously
identified in their responses to Interrogatory No. 7.  (*See* Defendants' Second Supplemental
Responses to Plaintiff's First Set of Interrogatories, Ex. 11 hereto, at Interrogatory No. 7.)

**G.      Defendants Inform the Commission That It Will Have to Pay to Obtain Defendants' Records**

Subsequently, on October 1, 2014, two and a half months after the Deadline and over three months since the Court issued the Order, Defendants informed the Commission that KPMG has located the images of the damaged hard drives and sectors but that it would cost approximately $3,000 to retrieve them and send them to the United States.  Even though KPMG was Defendants' agent and had imaged the drives at Defendants' direction, Defendants stated that they would not produce the images but rather only offered to release the images to the Commission for it to image but only after the Commission paid the $3,000 cost of retrieval and shipment to the United States.  Defendants also informed the Commission that it would cost approximately $2,000 to retrieve and copy the financial records from their bank accounts, and again, even though the records are from Defendants' corporate bank accounts, Defendants offered to produce those records but only after the Commission paid the $2,000 cost of retrieval.[24]  The Commission declined those offers on the basis that the presumption in litigation is that the responding party must bear the expense of complying with discovery requests.  *See* n. 29 *infra*.

**H.      Carl Wolfenden Identifies That Defendants Have a U.S. Bank Account that Contains U.S. Customer Funds and that Was Not Previously Disclosed**

On October 9, 2014, during his deposition, Mr. Wolfenden, an employee of Defendants, identified that hundreds of thousands of dollars of Intrade U.S. customer funds were sent by Defendants to Santander Bank of New York during the Relevant Period.  This bank was not identified by either Intrade or TEN in their Responses to Interrogatory No. 8 (*see* Exs. 2 and 3),

---

[24]      During that call, Defendants also stated that on September 29, 2014, Mr. Delaney's widow notified them that his estate did not have any of Defendants' business records and accordingly, their production as to Request Nos. 3 and 13 was complete.

and it was the first time that the Commission learned of the transfer or even the Defendants' use

of this U.S. bank to hold customer funds.  The Commission immediately made a request for all

documents associated with that account and for Defendants to supplement their discovery

responses.   Subsequently, on October 15, 2014, the Defendants supplemented their responses to

Interrogatory No. 8 and revealed for the first time that on August 26, 2014, nearly two months

beforehand, "all of TEN's and Intrade's U.S. customer funds were transferred from Danske Bank

[in Ireland] to Santander Bank" in New York.  (*See* TEN's Third Supplemental Responses to

Plaintiff's First Set of Interrogatories, Ex. 12 hereto, at Interrogatory No. 8; Intrade's Third

Supplemental Responses to Plaintiff's First Set of Interrogatories, Ex. 13 hereto, at Interrogatory

No. 8.)[25]

## I.     The Parties Conduct Another Meet and Confer Conference About Defendants' Production Failures

Further, on October 15, 2014, now three months after the Deadline and two and a half

months since the initial meet-and confer conference, the parties conducted another meet-and-

confer conference regarding the still outstanding discovery and Defendants' failure to fully

comply with their discovery obligations in violation of the Court's Order and the Federal Rules

of Civil Procedure.  In particular, the Commission alerted the Defendants to the following

transgressions:

- That Defendants had failed to produce, or indeed apparently even search for, all intercompany e-mail communication responsive to the Commission's requests, including Mr. Bernstein's responsive e-mail, as well as responsive e-mail from other senior level

---

[25]     That same day, three months after the Deadline, TEN finally supplemented its response to Interrogatory No. 6 concerning the factual basis for TEN's assertion that it had no U.S. customers during the Relevant Period, as ordered by the Court's June 24, 2014 Order.  (See Ex. 12 at Interrogatory No. 6)

officers, directors, managers or shareholders, including without limitation, Dean LeBaron, Marilyn Pitchford, and Imants Auzins;[26]

- That prior to October 15, 2014, Defendants had failed to identify in response to Interrogatory No. 8, which was directed to each of the Defendants, that one or more of the Defendants had opened a bank account at Santander Bank in New York, and transferred U.S. customer funds to that account on August 26, 2014;

- That Defendants had failed to produce all responsive bank records, including records from Santander Bank, in response to Request for Production Nos. 4 and 14 directed to each of the Defendants,[27] and that Defendants were refusing to produce certain responsive bank records, notwithstanding that those documents relate to the Defendants' own bank accounts and thus are within the Defendants' control, unless the Commission paid for the cost of their retrieval and copying;[28] and

- That Defendants had refused to produce images of damaged computer hard drives and sectors held by KPMG, even though Defendants stated on August 18th that they thought the hard drives contained responsive documents (*see* Ex. 8), and notwithstanding that KPMG is the Defendants' agent and imaged those computers at the Defendants' instructions, unless the Commission paid KPMG's costs of retrieval and copying.

On October 17, 2014, the Commission sent Defendants an e-mail summarizing the issues

discussed during the meet-and-confer.  (*See* October 17, 2014 e-mail from Kathleen Banar to Jeff

---

[26]     In reviewing Mr. Wolfenden's mbox file that Defendants produced, the Commission discovered e-mails in which these individuals, among others, were discussing the same issues at the core of the Complaint, and Mr. Wolfenden was included at some point in the e-mail chain and, accordingly, was included in his mbox file.

[27]     Indeed, during the call, Defendants advised that they had not even requested responsive documents from Santander Bank as of that date despite that the Commission, upon learning of the existence of that account for the first time at Mr. Wolfenden's October 9th deposition and that U.S. customer funds had been transferred there, made a specific request at the deposition that the Defendants' immediately supplement their discovery responses.

[28]     Subsequently, on October 20 and 21, 2014, Defendants produced account statements for Defendants' bank accounts at Santander Bank and Allied Irish Banks, respectively.  However, Defendants still did not produce all financial records responsive to the Commission's requests from Anglo Irish Bank, Bank of Ireland or Danske Bank presumably as they expected to have the Commission pay the $2,000 cost of obtaining those records.

Hamlin, Ex. 14 hereto.)[29]  As a consequence of the Defendants' failures to comply with the

Order and the Federal Rules of Civil Procedure, particularly their failure to search for and

provide Mr. Bernstein's responsive e-mails, among others, and all responsive bank account

information, the Commission was forced to postpone the Fed. R. Civ. P. 30(b)(6) depositions of

the Defendants (Mr. Bernstein was designated by the Defendants as their sole Rule 30(b)(6)

witnesses for both Defendants), which had been rescheduled and set by the agreement of the

parties for October 21st and October 22nd, 2014.  *Id*. at 2.

**J.     The October 22, 2014 Hearing With This Court Regarding Defendants' Non-Compliance With the Court's Order and the Filing of a Motion to Show Cause Prompts Defendants, Among Other Things, To Search for All Responsive ESI As Well As Provide Hard Drives and Financial Documents Three and a Half Months After the Deadline**

On October 22, 2014, the Court held a conference with the parties concerning the status

of discovery.  Upon learning of Defendants' failures to comply with its discovery obligations and

the Order, the Court reminded the parties that the Court had issued a deadline for the

Defendants' production in the Order, noted that the Defendants could be in contempt of that

Order, and stated that the appropriate motion for the Commission to file was a motion for a rule

to show cause why Defendants are not in contempt of the Order.

---

[29]     In that e-mail the Commission also notified Defendants that their position concerning the images of the hard drives and bank records was untenable given that the presumption under the Federal Rules of Civil Procedure is that each party must bear its own costs of discovery.  (*See* Ex. 14, citing *Rowe Entertainment Inc. v. The William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002) ("Under [the discovery] rules, the presumption is that the responding party must bear the expense of complying with discovery requests [.]") (quoting *Oppenhiemer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).)  *See also*, *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 571-72 (N.D. Ill. 2004) ("The Court also begins this discussion with the general presumption in discovery that the responding party must bear the expense of complying with discovery requests. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). However, if the responding party asks the court for an order protecting it from 'undue burden or expense,' the court may shift the costs to the non-producing party, rather than just disallowing the requested discovery.  Fed.R.Civ.P. 26(c).")

Thereafter, on October 23, 2014, the Commission received a voice mail message from Defendants in which they requested a conference call with the Commission so that Mr. Bernstein could obtain a list of outstanding discovery items.  Later that day, the Commission sent Defendants an e-mail in which it advised Defendants, among other things, that the Commission "require[d] only that the Defendants comply with the Court's June 24, 2014 Order and the Federal Rules of Civil Procedure by producing all non-privileged documents and information, not previously produced, that are responsive to the Commission's requests," that the Commission's "October 17, 2014 e-mail summarize[d] some of the documents and information that Defendants had failed to produce as of that date – but only documents and information that the Commission happened to become aware of as of that date," and "that the 'list' of 'outstanding discovery items' [wa]s known only to Defendants."  (*See* October 23, 2014 e-mail from Kathleen Banar to Jeff Hamlin, Ex. 15 hereto.)

On October 28, 2014, Defendants sent the Commission an e-mail containing "a working list of search terms that [they] plan[ned] to use for the collection of additional discovery from [their] electronic files."  (*See* October 28, 2014 e-mail from Jeff Hamlin to Kathleen Banar, Ex. 16 hereto.)  Later that day, the Commission sent Defendants an e-mail as a follow-up to the October 15th conference call and the October 17th e-mail regarding certain discovery issues, the October 28th e-mail identifying the list of search terms, as well as requesting a meet-and-confer for this Motion.  (*See* October 28, 2014 e-mail from Kathleen Banar to Jeff Hamlin, Ex. 17 hereto.)

On November 1, 2014, Defendants responded to the discovery issues that the Commission raised in its October 17th and 28th e-mails.  (*See* November 1, 2014 e-mail from Jeff Hamlin to Kathleen Banar, Ex. 18 hereto.)  Of particular note, Defendants stated that, using the

15

search terms that they provided along with the Commission's proposed additions, they were searching Mr. Bernstein's business and personal e-mail accounts for responsive information. Defendants also stated that they were seeking additional ESI within their possession and custody and specifically were reviewing all e-mail accounts for a number of Defendants' senior-level officers, directors, shareholders and employees including Imants Auzins, Dean LeBaron, John McNamara, Stuart Niman and Marilyn Pitchford.[30]  Defendants also stated that they had requested responsive documents and ESI that were not within their possession or custody, from the personal e-mail addresses of a number of current and/or former senior-level officers, directors, shareholders and employees.  Defendants added that they had ordered the copies of the damaged hard drives from KPMG and had requested all financial documents from Dansk Bank.[31]

Subsequently, on November 3, 2014, the parties' held a meet-and-confer telephone conference concerning the on-going discovery issues and this Motion including that the Commission would seek an order to show cause why Defendants should not be held in civil contempt and for sanctions pursuant to Rule 37(b) of the Federal Rules of Civil Procedure.

Finally, on November 6, 2014, after the meet-and-confer and the day before this filing, Defendants provided a supplemental production of documents,[32] and also informed the

---

[30]    Defendants did not identify either Mr. McNamara or Mr. Niman in their responses to Interrogatory No. 7, as an officer, director, shareholder or employee of TEN or Intrade, and this was the first time that the Commission learned that these individuals may have responsive information.  (*See* Exs. 2, 3.)

[31]    Defendants also advised that they had requested all responsive documents from Danske Bank and had arranged to have the documents copied  and produced to their counsel, and had further renewed their request for financial documents from Bank of Ireland and Anglo Irish Bank.

[32]    In particular, the Defendants produced "e-mail correspondence from the intrade.com e-mail accounts for Imants Auzins, Bernice Caulfield and *marketing@intrade.com*, and a handful of electronic documents from Marilyn Pitchford's files" as well as .tif images of hard copy files that Mr. Bernstein recently located."  Defendants provided no explanation as to why they had not originally searched these *intrade.com* addresses for responsive information.  Moreover, Bernice

Commission that it would deliver to the Commission the hard drive images it had obtain from

KPMG on November 7, 2014, for the Commission to image, and would be producing that same

day e-mails from Mr. Bernstein's business and personal e-mail accounts.  Defendants also

informed the Commission that they purportedly had "nearly completed" their responses to the

Commission's discovery requests.  (*See* November 6, 2014 e-mail from Jeff Hamlin to Kathleen

Banar, Ex. 19 hereto).  The alleged timeline in that e-mail makes clear (even if taken as

accurate), however, that "Defendants have failed to obey the Court's Order and the Federal Rules

of Civil Procedure, have failed to search for and produce all responsive materials by the Court's

July 14, 2014 deadline, continued to fail to search for and produce those materials after the

deadline had well passed, and even now, nearly four months after the Court-ordered deadline, are

still not in full compliance."  (*See* November 7, 2014 e-mail from Kathleen Banar to Jeff Hamlin,

Ex. 20, hereto.)

## III.    ARGUMENT

While Defendants have stated in their November 6th e-mail that by November 7, 2014,

almost four months after the Deadline, their discovery responses and productions purportedly

will be "nearly completed," as explained below, Defendants are still and have been for months in

civil contempt of this Court's Order.  Indeed, even if Defendants today produced all of the

outstanding documents responsive to the Commission's requests, Defendants would still have

violated the Court's Order and should be appropriately sanctioned under Rule 37(b).[33]

---

Caulfield was not identified by Defendants in their responses to Interrogatory No. 7, as an officer, director, shareholder or employee of TEN or Intrade, and this was the first time that the Commission learned that she had a Intrade company e-mail account and may have responsive information.   (*See* Exs. 2, 3.)

[33]    While the Commission is moving for an order to show cause why Defendants are not in civil contempt and for sanctions under Rule 37(b) for Defendants violations of the Order and failures to abide by their discovery obligations, the parties have also – since the October 22, 2014

A.      **Defendants Are in Civil Contempt**

Civil contempt is a remedial device that the Court can utilize to achieve full compliance with its orders, including the Order that requires Defendants produce all documents responsive to the Commission's requests for production. *See Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F.Supp.2d 35, 38 (D.D.C. 2010) (citing *SEC v. Bankers Alliance Corp.*, 991 F.Supp. 673, 678 (D.D.C. 1995). For the Court to make a finding that Defendants are in civil contempt, the Commission must show, by clear and convincing evidence, that: (1) the Order was in place; (2) the Order required certain conduct by Defendants; and (3) Defendant failed to comply with that Order. *See id.* (citing *Armstrong v. Executive Office of the President*, 1 F.3d 1274,1289 (D.C. Cir. 1993); *Secs. & Exch. Comm'n v. Bilzerian,* 112 F.Supp.2d 12, 16 (D. D.C. 2000).) The Commission further must show that the Order was clear and unambiguous. *See id.* (citing *Armstrong*, 1 F.3d at 1289.) Defendants' intent regarding compliance with the Order is irrelevant. *See id.* (citing *Bilzerian,* 112 F.Supp.2d at 16.) The evidence clearly and convincingly shows that Defendants have been and still are in civil contempt of the Court and its Order.

First, the Order was in place and entered by the Court on June 24, 2014.

Second, the Order is clear and unambiguous in that it "GRANT[ED] in its entirety [the] [Commission's] Motion to Compel. . .[,]  DENIE[D] Defendants' Motion for a Protective Order[,]" and required that Defendants "must produce all documents responsive to the CFTC's requests for production and also complete their responses to CFTC's interrogatories within

---

hearing with this Court – had a discussion regarding whether or not the Commission's claims against Defendants can be resolved short of trial.

twenty (20) days of the entry of [the] [O]rder" or by July 14, 2014 Deadline.[34]

Third, the evidence clearly and convincingly shows that Defendants failed to produce all responsive documents and complete their interrogatory responses by the Deadline, failed to request from the Court any relief, including reconsideration, for not complying with the Court's Order either before or after the Deadline, and still have not produce all documents responsive to the Commission's requests, including all ESI, for production even though it is now almost four months since the Deadline. In particular, among other things, the evidence shows that by the Deadline:

- Defendants had not provided complete responses to all of the Commission's Interrogatories, and would not do so for another three months (*see* Section II.H, *supra*.);

- Defendants only had provided some hard copies documents and one mbox file that Defendants' had not reviewed for responsiveness, that contained mostly non-responsive e-mails, and that was infected by malware (*see* Section II.B, *supra*.);

- Defendants had not searched Defendants' intercompany e-mails, including all ESI, for responsive documents (*see* Section II.H, *supra*.);

- Defendants had not searched other locations, such as the Delaney Barn, or the Lucan storage facility for responsive documents (*see* Section II.D and F, *supra*.); and

- Defendants had not contacted their financial institutions to obtain responsive documents (*see* id.).

More importantly, as of today, almost four months after the Deadline and well over four months since the Court issued its Order, the evidence shows among other things that:

- Defendants still have not produce all ESI responsive to the Commission's requests;

- Defendants are just today purportedly producing images of the damaged hard drives that they "believe contain responsive information;" and

- Defendants have not produced all financial records responsive to the Commission's

---

[34]     Indeed, the docket entry for the Order again reiterates that the Order is clear and unambiguous: "Set/Reset Deadlines: Defendants to fully respond to all requests for documents and to interrogatories by 7/14/2014. . ."  (*See* Dkt No. 33.)

requests.

Thus, the clear and convincing evidence shows the Commission has made the three-part

showing, and that Defendants have failed and continue to fail to comply with the requirements of

the Order.[35]   Accordingly, the Court should find them in contempt.[36]

## B.      Defendants Should Be Sanctioned Under Rule 37(b)(A)

Federal Rule of Civil Procedure 37 provides for a range of sanctions related to

Defendants' failure to cooperate during discovery.  *See Embassy of Fed. Rep. of Nigeria v.*

*Ugwuonye*, 292 F.R.D. 53, 56 (D.D.C. 2013).  In particular, under Rule 37(b), the Court may

impose sanctions upon Defendants for "'fail[ing] to obey an order to provide or permit

discovery,' including an order on a motion to compel." *See id.* (citing Fed.R.Civ.P. 37(b)(2)(A).)

---

[35]     Moreover, "based on Defendants' past performance, in which they repeatedly trickled in additional productions only after being alerted by the Commission to large gaps in their production (and required the Commission to discover on its own that Defendants had failed to disclose key bank information), the Commission at this point has no confidence that Defendants have produced all responsive documents and information, notwithstanding [their] representation that the production is 'nearly' complete." (*See* Ex. 20.)

[36]     Once the Court determines that the Commission has made the three-part showing, "the burden shifts to [] [D]efendant[s] to justify [their] noncompliance" and "show that [they] ha[ve] 'done all within [their] power' to comply with the [] [O]rder." *See Int'l Painters*, 736 F.Supp.2d at 40 (quoting *Pigford v. Veneman*, 307 F.Supp.2d 51, 57 (D.D.C. 2004).)  In civil contempt proceedings, a party can justify its failure to comply with a court order by establishing its inability to comply or good faith substantial compliance. *Id.* (citing *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union,* 103 F.3d 1007, 1017 (D.C.Cir.1997).)  However, the contemnor must demonstrate an inability to comply "categorically and in detail," *Bankers Alliance Corp.,* 881 F. Supp. at 678 (quoting *Secs. & Exch. Comm'n v. Current Fin. Servs., Inc.,* 798 F.Supp. 802, 806 (D.D.C.1992)), and prove that it acted in good faith substantial compliance, by showing that it "took all reasonable steps within [its] power to comply." *Food Lion, Inc.*, 103 F.3d at 1017.  Here, it is clear that Defendants did not take all reasonable steps within its power to comply with the Order.  For example, Defendants could have run their proposed search terms against their ESI months ago to search for responsive documents but chose not to do so.  Likewise, they could have contacted their banks for financial records months ago but again chose not to do so.  Similarly, Defendants could have provided their explanation as to why TEN supposedly had no U.S. customers months ago, yet again chose not to do so.  Defendants have not acted and continue to not act in good faith substantial compliance with the Order.

The plain language of Rule 37(b) requires that the Commission "demonstrate that (1) there is a discovery order in place, and (2) that the discovery order was violated" by Defendants. *Id.* (citing *D.L. v. D.C.*, 274 F.R.D. 320, 325 (D.D.C. 2011).)  If these requirements are met, as they are here (*see* Section III.A, *supra*), Rule 37(b) allows for several specific forms of sanctions including the following:

- Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

- Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

- Striking pleadings in whole or in part;

- Staying further proceedings until the order is obeyed;

- Dismissing the action or proceeding in whole or in part;

- Rendering a default judgment against the disobedient party; or

- Treating as contempt of court the failure to obey any order.

*See* Fed.R.Civ.P. 37(b)(2)(A)(i)-(vii).  Further, the list of possible types of sanctions is not exclusive.  *See D.L.*, 274 F.R.D. at 325 (citing *Mojarad v. Aguirre*, No. CIV.A.05-0038, 2006 WL 785415, at *10 (D.D.C. March 27, 2006) (acknowledging that the list of sanctions enumerated in Rule 37(b)(2)(A) is neither exhaustive nor mutually exclusive, and "the court may impose [more than one of the enumerated sanctions] at the same time[ ]"; "[t]he imposition of the number and type of sanctions employed under [Rule 37(b)(2)(A)] is left to the discretion of the trial judge").)  Thus, as it did in *D.L.*, the Court "may exercise discretion to fashion sanctions appropriate for the facts before it under Rule 37(b)" for Defendants' misconduct in violating the Order.  *Id.* (holding that waiver of privilege was appropriate sanction for District of Columbia Public Schools repeated, flagrant and unrepentant failures to comply with discovery orders.)

As the Court has previously explained, "When calibrating the extent of the sanction, Rule

37's central requirement is that 'any sanction must be just'" and "'[t]he choice of sanction should be guided by the concept of proportionality between offense and sanction.'" *Id*. at 325 (quoting *Bonds v. D.C.*, 93 F.3d 801, 808 (D.C. Cir. 1996). Thus, "[i]n determining whether a severe sanction is justified," the Court "may consider the resulting prejudice to the other party, any prejudice to the judicial system, and the need to deter similar misconduct in the future." *Bonds*, 93 F.3d at 808 (quoting citations omitted). Indeed, deterrence is a legitimate purpose since sanctions are "not merely [intended] to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *See Id.* (citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778 (1979).)

Here, given Defendants' flagrant and continual failures to obey the Order and fulfil their discovery obligations, the Commission believes that the appropriate sanctions should be:

1.     That each and every affirmative defense to the claims of the Commission's complaint that Defendants have asserted and/or will assert, including those contained in their March 27, 2013 Answer (Dkt. No 7) be stricken from the record and that Defendants be prohibited from asserting those defenses;

2.     That Defendants be barred from raising any issues concerning the laws of the Republic of Ireland and/or European Union in connection with any further motions and/or oppositions, including in discovery, for summary judgment and in connection with a trial in this action; and

3.     That Defendants pay all reasonable expenses, including attorney's fees, incurred by the Commission as a result of their failures to obey the Court's Order and abide by their discovery obligations including those expenses that the Commission incurred concerning (i) its

Motion to Compel and Reply (Dkt. Nos. 25 and 30), and (ii) this Motion to Show Cause and for Sanctions.[37]

Further, given that Defendants still have not fully complied with their discovery obligations and as the Commission at this time has no knowledge as to the full extent of the information that may be contained in Defendants ultimate production, the Commission requests that the Court allow it to reserve the right to seek further sanctions against Defendants if necessary including, but not limited to, prohibiting Defendants from introducing designated matters into evidence.[38]   Indeed, given that it is quite apparent that Defendants did not take appropriate steps to immediately search for all ESI that may be responsive to the Commission's requests, or apparently contact all of their officers, directors and/or employees who may have had responsive information after the Court issued its Order, there is a distinct possibility of spoliation of evidence.

## IV.   CONCLUSION

For the foregoing reasons, the Commission respectfully requests that this Court enter an order:

---

[37]   Should the Court grant this request for reasonable expenses, the Commission will then provide the Court an affidavit and/or other evidence demonstrating the reasonable expenses that it has incurred as a result of Defendants' discovery failures.

[38]   If and when Defendants comply with their discovery obligations and provide full and complete responses to the Commission's requests, the Commission will need to review that information as it has done repeatedly throughout this process to ascertain whether there are any gaps in Defendants production.  For example, it was only after Defendants provided the mbox file for Mr. Wolfenden that the Commission learned that there were a number other individuals, like Mr. Amants and Ms. Pitchford among others, who were discussing the core issues of the Complaint and yet Defendants had neglected to search those individuals e-mails for responsive documents until the Commission informed Defendants of their failure.  *See* n. 26, *supra*.

(1)     Granting the Commission's Motion for a Rule to Show Cause, and issuing to the Defendants' a Rule to Show Cause why Defendants should not be held in Civil Contempt for their violations of this Court's June 24, 2014 Order; and

(2)     Granting the Commission's Motion for Sanctions Against Defendants Pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure for their violation of this Court's June 24, 2104 Order, and their continued violations of their discovery obligations under the Federal Rules of Civil Procedure, and

(3)     For Defendants' Contempt of this Court's Order and/or Their Violations of Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, entering an order further finding that:

a)  Each and every of Defendants' affirmative defenses to the claims of the Complaint is stricken from the record and that Defendants are prohibited from asserting those defenses or introducing evidence in support of those defense;

b)  Defendants are barred from raising any issues concerning the laws of the Republic of Ireland and/or European Union in connection with any further motions and/or oppositions, including in discovery, for summary judgment and in connection with a trial in this action; and

c)  Defendants must pay all reasonable expenses, including attorney's fees, incurred by the Commission as a result of their failures to obey the Court's Order and abide by their discovery obligations including those expenses that the Commission incurred concerning (i) its Motion to Compel and Reply (Dkt. Nos. 25 and 30), and (ii) this Motion to Show Cause and for Sanctions.

Pursuant to Fed. R. Civ. P. 37(a)(1), and Local Civil Rule 7(m), the undersigned counsel for the Commission certifies that, as detailed above, counsel for the Commission have in good

faith conferred with counsel for TEN and counsel for Intrade by telephone, e-mail and other

correspondence in an effort to obtain their full compliance with this Court's June 24, Order, and

have provided Defendants notice of the Commission's intent to file this Motion for a Rule to

Show Cause Why Defendants' are not in Civil Contempt and for Sanctions pursuant to Rule

37(b)(2)(A) of the Federal Rules of Civil Procedure.

Dated:  November 7, 2014

Respectfully Submitted,
*One of the Attorneys for Plaintiff,*
*U.S. Commodity Futures Trading*
*Commission*

 /s/ Kathleen Banar

Kathleen Banar
Telephone:  (202) 418-5335
Facsimile:  (202) 418-5987
*kbanar@cftc.gov*
(Ill. Bar No.:  6200597)

David Slovick
Telephone:  (202) 418-5451
Facsimile:  (202) 418-5987
*dslovick@cftc.gov*
(Ill. Bar No.:  6257290)

## CERTIFICATE OF SERVICE

I, Kathleen Banar, hereby certify that on November 7, 2014, I filed (i) *Plaintiff's Motion And Memorandum In Support Of (1) An Order To Show Cause Why Defendants Are Not In Civil Contempt And (2) For Sanctions Against Defendants Pursuant To Fed. R. Civ. P. 37(b)(2)(A)*, (ii) accompanying Exhibits 1 through 20, and (iii) a Proposed Order with the Clerk of Court using the CM/ECF system, which will automatically serve an email notification of said filing on the following attorneys of record:

David B. Deitch
IFRAH PLLC
1717 Pennsylvania Avenue, Suite 650
Washington, D.C. 20006
Telephone: (202) 524-4147
Facsimile: (202) 524-4141
*ddeitch@ifrahlaw.com*

Jeff Hamlin
IFRAH PLLC
1717 Pennsylvania Avenue, Suite 650
Washington, D.C. 20006
Telephone: (202) 524-4143
Facsimile: (202) 524-4141
*jhamlin@ifrahlaw.com*

A. Jeff Ifrah
IFRAH PLLC
1717 Pennsylvania Avenue, Suite 650
Washington, D.C. 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141
*jeff@ifrahlaw.com*

/s/ Kathleen Banar

*One of the Attorneys for Plaintiff,*
*U.S. Commodity Futures Trading*
*Commission*