## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 12-1902 (RCL) |
| TRADE EXCHANGE NETWORK LIMITED, an Irish company, and INTRADE THE PREDICTION MARKET LIMITED, an Irish company, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO THE PETITION FOR ATTORNEY'S FEES

In their Opposition to Plaintiff's Petition for Attorney's Fees (Dkt. No. 64, the "Petition"), Defendants Trade Exchange Network Limited ("TEN") and/or Intrade the Prediction Market Limited ("Intrade") (collectively, "Defendants") contend that the Court should reduce the number of hours that the attorneys for Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission"), Kathleen Banar and James Deacon, expended in successfully prevailing on the Commission's Motion to Compel Defendants to Produce Documents and Interrogatory Responses and Statement of Points and Authority in Support (Dkt. No. 25, the "Motion to Compel") and Motion and Memorandum in Support of an Order (1) to Show Cause Why Defendants Are Not in Civil Contempt and (2) for Sanctions against Defendants pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) (Dkt. No. 35, the "Motion to Show Cause and for Sanctions") as well as preparing the Petition.  In particular, they argue the hours are unreasonable as (1) they "include [hours for] non-compensable tasks" not covered by the Court's

1

July 31, 2015 Order (Dkt. No. 59) (the "July 31 Order")[1], (2) the attorneys' time entries are

"vague," billed in "block time," and billed in "hourly increments," and (3) the attorneys worked

on "junior-level tasks."  (*See* Opposition at 3–8.)

      As demonstrated below, however, each of those arguments is meritless, and, since both

the attorneys' hourly rate, which Defendants do not challenge, as well as the hours the attorneys

expended researching and preparing the Commission's (i) Motion to Compel, (ii) Reply in

Support of Its Motion to Compel (Dkt. No 30, the "Reply"), (iii) Motion to Show Cause and for

Sanctions, (iv) Reply to Defendants' Response to Order to Show Cause Why Defendants Should

Not Be Held in Civil Contempt (Dkt. No. 46, the "Reply to Defendants' Response"), and (v)

Petition (collectively the "Commission's Pleadings") are reasonable, the Court should grant the

Commission's fee award in full and enter an order requiring Defendants to pay, jointly and

severally, $50,975 to the Commission for its attorney's fees.  *See Woodland v. Viacom, Inc.*, 255

F.R.D. 278, 280 (D.D.C. 2008) ("'In calculating plaintiff's fee award, the Court must determine:

(1) the reasonableness of the hourly rate charged; and (2) the reasonableness of the hours

expended on the litigation.'" (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107

(D.C. Cir. 1995)).

**A.**    **The Commission's Attorney Hours Are Reasonable Because They Concern Those Tasks For Which The Court Explicitly Ordered the Defendants to Pay Attorney's Fees As Well As Those In Preparing The Petition**

    Defendants argue that the Commission is not entitled to the attorney's fees it incurred

from the preparation by its attorneys of the Commission's Motion to Compel, the Reply and the

Petition because the July 31 Order purportedly "limits [the Commission's] fee award to fees that

[the Commission] incurred 'as a result of' Defendants' failure to obey the Court's June 24[,

---

[1]  In their Opposition, Defendants misidentify the July 31 Order by the date it was docketed by the Clerk, August 3, 2015, rather than the date it was signed by the Court.  (*See* Opposition at 1.)

2014] Order (Dkt. 33) [the "June 24 Order"], including expenses that [the Commission] incurred 'concerning (i) the plaintiff's Motion to Show Cause (35) and (ii) the plaintiff's [subsequent] Reply (46)'" (quoting the July 31 Order at 1), "[only] covers fees incurred as a result of Defendants' failure to comply with the June 24 Order compelling discovery," and "does not cover fees that [the Commission] incurred to obtain [the June 24] [O]rder in the first place." (Opposition at 3–4.)  That argument, however, is disingenuous because it inexplicably ignores the Court's December 3, 2014 Order (Dkt. 37) (the "December 3 Order") in which it clearly ordered "Defendants [to] pay all reasonable expenses, including attorney's fees, incurred by the Commission as a result of [Defendants'] failures to abide by their discovery obligations ***including those expenses that the Commission incurred concerning (i) its Motion to Compel and Reply (Dkt. Nos. 25 and 30), and (ii) [the] Motion for Sanctions***."  (December 3 Order at 2 (emphasis added).)[2]

Indeed, Defendants' omission to any reference to the December 3 Order is especially troubling considering that (1) on December 9, 2014, Defendants moved to vacate that portion of the December 3 Order which granted the Commission's request for sanctions including its attorneys' fees (Dkt. No. 38, the "Motion to Vacate"), and (2) as part of the July 31 Order, the Court explicitly denied the Motion to Vacate.  (*See* July 31 Order at 2, "Upon consideration of [D]efendant[s'] Motion [38] to Vacate and Reconsider the Portion of the Court's Order [37] Imposing Sanctions, the [Commission's] Opposition [39], and the [D]efendants' Reply [42], it is further **ORDERED** that [D]efendants' Motion to Vacate and Reconsider the Portion of the Court's Order Imposing Sanctions is **DENIED**" (emphasis in the original).)

---

[2]  Defendants' omission is also problematic considering that the Commission made it abundantly clear in the Petition that it was seeking its award for attorneys' fees not only pursuant to the July 31 Order but also the December 3 Order.  (*See* Petition at 1–3.)

Nonetheless, regardless of the reasons surrounding their omission, because the December 3 Order is still in full force and effect and has not been modified or vacated by the Court, this supposed limit to the fee award that Defendants represented to the Court does not exist, and, as such, Defendants must pay the Commission not only all reasonable attorney's fees incurred concerning the Motion to Show Cause and the Reply to Defendants' Response (see July 31 Order at 1) but also all reasonable attorneys' fees that it incurred concerning the Motion to Compel, Reply and Motion for Sanctions.[3]  (*See* December 3 Order at 2.)

Additionally, besides ignoring the Court's December 3 Order, Defendants also ignore the case law cited by the Commission in the Petition that allows the Court to award the Commission the attorney's fees incurred for preparing the Petition.  In particular, as the Commission informed the Court in the Petition, the Commission is also seeking reimbursement for the time its attorneys spent preparing the Petition and the Declarations filed in support of it because under existing case law "within bounds, [the] time reasonably devoted to obtaining attorney's fees in the context of litigation where the court must be petitioned for such an award *is itself subject to an award of fees*."  (*See* Petition at 4, n. 2 (quoting *Tequila Centinela, S.A. v. Barcardi & Co. Ltd.*,

---

[3]  In their Opposition, Defendants also try to make the hours that the Commission incurred appear unreasonable by stating that of the 57 hours that Mr. Deacon spent researching, drafting and filing the Motion to Show Cause and for Sanctions, the Reply to Defendants' Response and Petition, "only eleven post-date the June 24[, 2014] Order compelling discovery."  (Opposition at 4.)  Even if that statement were relevant to the Court's determination, which it is not because the December 3 Order requires Defendants to pay all reasonable attorneys' fees concerning the Motion to Compel, Reply and Motion for Sanctions, it is untrue.  All of the 57 hours that Mr. Deacon spent on those papers were spent *after* the Court issued its June 24, 2014 Order.  (*See* Exhibit 2 to Petition, Deacon Declaration, at ¶¶ 7–9, demonstrating that Mr. Deacon prepared the Motion to Show Cause and for Sanctions, the Reply to Defendants' Response and Petition from October 22 to November 7, 2014, January 20 and 27, 2015 and August 4 and 7, 2015, respectively.)  Moreover, Defendants' statement is not only wrong but simply illogical.  Defendants do not, and indeed cannot, explain how Mr. Deacon could possibly prepare contempt/sanction papers against them *before* the Court had issued the June 24 Order.

248 F.R.D. 64, 72 (D.D.C. 2008) (emphasis added).)  Defendants, however, did not address this argument in their Opposition.

Besides, even though the Court did not explicitly award fees for preparation of the Petition in the December 3 or July 31 Orders, it did award all reasonable attorneys' fees incurred by the Commission (1) "as a result of [Defendants'] failures to abide by their discovery obligations" (December 3 Order at 2) and (2) "as a result of [Defendants'] failures to obey the Court's [June 24, 2014] Order." (July 31 Order at 1.)  Clearly, but for Defendants' failures to abide by their discovery obligations and obey the Court's June 24 Order, the Commission would not have had to incur the additional fees that it did in preparing the Petition as well as this Reply.[4]  In other words, if Defendants had complied with the June 24, 2014 Order as they were required to do, the Commission would not have had its attorneys expend time preparing the Petition.

**B.    The Commission's  Petition Is Sufficiently Detailed to Permit the Court  To Make An Independent Determination That The Hours Claimed Are Reasonable And Justified**

Next, Defendants argue that attorneys' hours claimed by the Commission in its Petition are unreasonable and should be reduced because the attorney's time entries are "vague," billed in "block time," and billed in "hourly increments."  (*See* Opposition at 5–7.)  Defendants' arguments are meritless.

To determine the reasonableness of the number of hours expended on a litigation, the fee petitioner must submit evidence to the court that supports the hours worked.  *Woodland*, 255

---

[4]  Although the Commission believes that under both the December 3 and July 31 Orders as well as existing case law, it could seek those attorney's fees incurred in preparing this Reply, the Commission has determined not to do so.  Nor has the Commission sought to recover its attorney's fees for the hours spent researching and preparing its Opposition to Defendants' Motion to Vacate the December 3 Order (Dkt. No. 39) even though it believes it could do so under the December 3 and July 31 Orders.

F.R.D. at 281 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  That does not mean, however, as Defendants suggest, that a fee petitioner must present (1) the exact number of minutes spent on the litigation, (2) the precise activity to which each hour was devoted, or (3) the specific attainments of each attorney.  *Id.* at 281–82 (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)).  Rather, the petition "must be sufficiently detailed to permit the district court to make an independent determination whether or not the hours claimed are justified."  *Id.* (quoting *Concerned Veterans*, 675 F.2d at 1327).  Here, because the Commission did just that in its Petition, namely providing the Court through the Declarations of Ms. Banar and Mr. Deacon and their attachments (i.e., their time entries) with sufficient detail to demonstrate the work that its attorneys performed in preparing the Commission's Pleadings, the Court can make an independent determination that the attorney hours claimed by the Commission are reasonable and justified.

### 1.  The Commission's Time Entries Are Not Vague

First, the time entries by the Commission's attorneys are not vague such as to reduce the number of hours that were incurred researching, drafting and filing the Commission's Pleadings because the time entries provide: (1) the date the activity was performed; (2) the attorney who personally expended time on the activity; (3) a description of the activity; and (4) the amount of time expended on the activity.  (*See* Exhibits 1 and 2 to the Petition and Attachments thereto.) Accordingly, because the time entries are sufficiently detailed, the Court may "make an independent determination whether or not the hours claimed are justified."  *Woodland*, 255 F.R.D. at 282 (holding that although petitioner did not submit bills or invoices to the court, because the table that petitioner prepared and attached to an affidavit itemized the date the

activity was performed, the attorney who personally expended time on the activity, a description

of the activity, the amount of time expended on the activity, and pre-discount amount charged for

the performance of that activity, petitioner had provided the court with sufficient detail to make

an independent determination as to whether or not the hours claimed were justified.)[5]

### 2. The Commission's Time Entries Do Not Lump Together Multiple Non-Compensable Tasks

Second, contrary to Defendants' representations to the Court, the Commission did not

engage in wholesale "block-billing," that is lumping together multiple tasks some of which

would not be considered compensable pursuant to the Court's December 3 and July 31 Orders, in

its time entries.  Rather, the vast majority of the time entries solely concerned tasks associated

with the work performed on the Commission's Pleadings[6] and describe only one task being

---

[5] Defendants also maintain that the time entries were not created "contemporaneously" as they "were created up to two weeks after the date on which the work was performed."  (Opposition at 5–6.)  That argument is groundless.  No court has held that if a time entry is created a week or two after the work is performed, then it is not "contemporaneous" such that the entry cannot be considered in the Court's determination as to whether a petition is sufficiently detailed.  Rather, all that is required is that attorneys "who anticipate making a fee application must maintain contemporaneous, complete and standardize time records which accurately reflect the work done by each attorney."  *Concerned Veterans*, 675 F.2d at 1327.  That is precisely what the Commission's attorneys have done here by providing the Court with standardized and complete time records that accurately reflect the work that they performed in preparing the Commission's Pleadings that were created on or about (*i.e.*, "contemporaneous") the period that they performed that work.  Moreover, even if the Court were to adopt Defendants' strained definition of "contemporaneous," as evidenced by the time entries, many of them were created days not weeks of when the work was performed.  Finally, unlike other circumstances where an attorney can "anticipate" making a claim for fees, here the Commission's attorneys did not and could not "anticipate" having to make a fee petition with respect to the Motion to Compel and Reply because they did not and, indeed, could not "anticipate" that Defendants would utterly fail in complying with their discovery obligations and the Court's June 24 Order.

[6] Indeed, all of Mr. Deacon's time entries submitted to the Court solely concern his work on the Motion to Show Cause, the Reply to Defendants' Response, and the Petition.  As Ms. Banar described in her Declaration, three of her time entries may have included tasks that were not compensable pursuant to the December 3 and July 31 Orders and, accordingly, Ms. Banar conservatively discounted the hours contained in those entries by 10.5 hours or by approximately 60% of the total hours for those entries.  (*See* Exhibit 1 to Petition at 4, n.1.)

performed, that is researching and drafting of the Commission's Pleadings.  For example, for the work that he performed on the Motion to Show Cause and for Sanctions, the time entries for Mr. Deacon on October  22, 23, 24, 27, 29, 30 and November 3, 4, and 7, 2014 describe the following tasks being performed in preparing that pleading, respectively: "Research re: civil contempt";  "Research re: civil contempt"; "Research re: motion for contempt"; "Draft motion for contempt"; "Draft motion for contempt"; "Revise motion for contempt, revise email to J. Hamlin"; "Revise Motion for Contempt, research re: same"; "Meet and confer re: Motion for Contempt and Rule 37(b) sanctions, revised same to include additional facts"; "Revise Motion for Contempt and Rule 37(b) sanctions, research re: same"; and "Revise Motion for Contempt and for Rule 37(b) Sanctions."  (*See* Attachment A to Exhibit 2 of the Petition and compare with *Role Models America, Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004) (finding that petitioner engaged in block-billing when it lumped multiple tasks together in time records including tasks that were non-compensable and had nothing to do with the appeal of district court's decision for which petitioner sought fees.)  Therefore, because the Commission's time entries did not lump together multiple non-compensable tasks and its time entries are not block billed, the Commission's hours should not be discounted on that basis.

### 3.  The Commission's Attorneys Do Not "Bill" In Hourly Increments Or Otherwise; Rather Their Time Entries Record Duties Performed In 15-Minute Increments

Third, it appears that Defendants are under the misimpression that the Commission's attorneys must "bill" their time like they would in a private firm by recording it in six-minute increments.  (*See* Opposition at 7.)  Yet, the Commission is not a private firm with a host of employees "billing" clients for services at a pre-defined hourly rate.  Rather, the Commission is a government agency whose employees are compensated on a salary basis and do not "bill" any client or track their time for "billing" purposes.  Instead, the Commission's employees track their

actual time performed on matters and tasks, and then record their time in a time management system that records that time in 15-minute increments purely as an administrative duty so that the agency understands how its resources are being utilized on various matters.

Moreover, Defendants' bold accusation that "[the Commission] did not even adhere to 15-minute increments" and "counsel for [the Commission] recorded time in one-hour increments" (Opposition at 7) is unfounded, and Defendants offer no shred of proof other than their speculation that the time entries submitted in support of the Petition were not recorded in 15-minute increments.[7]  As described above, the  attorneys for the Commission tracked their actual time, recorded their time (and work performed) as entries into the time management system, and, regardless of Defendants' unfounded belief, the time entries reflect the time devoted to those tasks in 15-minute increments (*i.e.*, the time management systems rounds up to the nearest 15-minute increment, *e.g.*, a "1.4" hour time entry, representing an hour and twenty minutes of work, will automatically round up to "1.5" hours, or an hour and half).  As such, the time entries attached to the Declarations of Ms. Banar and Mr. Deacon speak for themselves as evidence that the attorneys spent that time performing the work described.

**C.      The Commission's Attorneys Worked On The Tasks Assigned To Them And For Which They Were Responsible**

Finally Defendants argue that "[the Commission's] fees should be discounted because counsel for [the Commission] billed senior-attorney rates for work that should have been delegated to junior attorneys or paralegals."  (Opposition at 8.)  Defendants' contention is

---

[7]   Although they do not say so, it appears that Defendants made this baseless charge because most of the time entries attached to the Declarations of Ms. Banar and Mr. Deacon reflected time in whole hours and not 15-minute increments (e.g., a time entry reflected "3" hours as compared to "2.75" hours or some other 15-minute increment).  Yet, as Defendants reluctantly acknowledge and which also undercuts their charge, some of the time entries in fact "show time in half-hour or quarter-hour increments."  (Opposition at 7.)

baseless because it is premised on their misunderstanding that the Commission is akin to a private firm. It is not.

Unlike a private firm, the Commission is not composed of junior associate attorneys with various skill levels who are being supervised by a senior partner and who perform most of the work on a matter while having access to numerous paralegals and other assistants to whom they can delegate lower level tasks. Further, unlike a private firm, the Commission cannot simply assign additional resources to a matter simple because a client is willing to pay for those resources and the firm can bill those additional resources to a client. Rather, the Commission is a government agency with a limited staff, most of whom have extensive experience, and finite resources which are severely constrained, especially in these times of austerity, by its budget from Congress. The limited staff members are assigned on a rolling basis to various investigative and/or litigations matters and, thus, are not available to have work delegated to them on matters to which they are not assigned. In other words, because Ms. Banar and Mr. Deacon were assigned to this litigation, they are responsible for the tasks that needed to be performed in this matter, and they could not delegate those tasks to other more junior attorneys or support staff because they were not available.

Besides, even if attorneys with less experience were available, Defendants have not shown that the attorneys' fees incurred by the Commission would have been less. Indeed, presumably because they have less experience, more junior attorneys would have spent considerably more time to prepare the Commission's Pleadings. Further, if junior attorneys had prepared the Commission's Pleadings, there is no presumption that they would have successfully prevailed on both the Commission's Motion to Compel and Motion to Show Cause and for Sanctions such that the Commission would be entitled to its fees. *See American Civil Liberties*

*Union v. U.S. Dep't of Homeland Security*, 810 F.Supp.2d 267, 277 (D.D.C. 2011) ("'[t]he

reasonableness of a fee request must be evaluated in light of the results obtained.'") (quoting *Nw.*

*Coal. for Alts. to Pesticides v. Browner*, 965 F.Supp. 59, 64-65 (D.D.C. 1997).)[8]

Accordingly, based on these reasons as well as those contained in the Petition and the

Exhibits attached thereto, the Commission respectfully requests that the Court enter an order

requiring Defendants to pay, jointly and severally, $50,975 to the Commission as reimbursement for

the time Ms. Banar and Mr. Deacon spent drafting and filing the Commission's Pleadings.


Dated: September 17, 2015

                                  Respectfully submitted,

                                  **ONE OF THE ATTORNEYS FOR PLAINTIFF**
                                  **U.S. COMMODITY FUTURES TRADING**
                                  **COMMISSION**

                                  /s/ James W. Deacon

                                  Kathleen Banar (Ill. Bar No.  6200597)
                                  U.S. Commodity Futures Trading Commission
                                  Division of Enforcement, 7th Floor
                                  1155 21st Street, NW
                                  Washington, D.C. 20581
                                  Telephone:  (202) 418-5335
                                  Facsimile:  (202) 418-5987
                                  *kbanar@cftc.gov*

---

[8] Finally, it should be noted that Defendants' attempt to reduce the number of attorney hours is fairly insincere considering that the Commission could have sought reimbursement for significantly more hours if it had chosen to do so.  Specifically, the Court awarded the Commission all reasonable attorney's fees incurred by the Commission "as a result of [Defendants'] failures to abide by their discovery obligations" and "as a result of [Defendants'] failures to obey the Court's [June 24,] Order."  Thus, the Commission could have also sought all the time that its attorneys expended in not only preparing the Commission's Pleadings but also the time spent trying to have Defendants abide by their discovery obligations including the several meet and confers that the Commission's attorneys had with Defendants as well as the numerous written communications that its attorneys prepared documenting Defendants' deficiencies.  Yet, the Commission conservatively chose not to seek that time.  As such, there can be no doubt that the hours the Commission seeks by its Petition are more than reasonable.

James W. Deacon (D.C. Bar No. 476216)
U.S. Commodity Futures Trading Commission
Division of Enforcement, 7th Floor
1155 21st Street, NW
Washington, D.C. 20581
Telephone:      202-418-5526
Facsimile:      202-418-5987
*jdeacon@cftc.gov*

## CERTIFICATE OF SERVICE

I, James Deacon, hereby certify that on September 17, 2015, I filed *Plaintiff's Reply to Defendants' Opposition to the Petition for Attorney's Fees* with the Clerk of Court using the CM/ECF system, which will automatically serve an email notification of said filing on the following attorneys of record:

A. Jeff Ifrah
IFRAH PLLC
1717 Pennsylvania Avenue, Suite 650
Washington, D.C. 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141
*jeff@ifrahlaw.com*

Jeffrey R. Hamlin
IFRAH PLLC
1717 Pennsylvania Avenue, Suite 650
Washington, D.C. 20006
Telephone: (202) 524-4143
Facsimile: (202) 524-4141
*jhamlin@ifrahlaw.com*

/s/ James W. Deacon

*One of the Attorneys for Plaintiff,*
*U.S. Commodity Futures Trading*
*Commission*

13