COMMODITY FUTURES TRADING )
COMMISSION, )
          )
     Plaintiff, )
          )
    v. )     Civil Action No. 12-1902 (RCL)
          )
TRADE EXCHANGE NETWORK )
LIMITED and INTRADE THE )
PREDICTION MARKET LIMITED, )
          )
     Defendants. )
          )

## MEMORANDUM OPINION

Before the Court is plaintiff Commodity Futures Trading Commission's Motion and Brief in Support as to the Appropriate Amount of Disgorgement and Civil Monetary Penalties for defendants Intrade The Prediction Market Limited and Trade Exchange Network's Violations of the Commodity Exchange Act and Commission Regulations. ECF No. 71. Upon consideration, the Court **GRANTS** plaintiff's Motion for an assessment of a civil monetary penalty ("CMP") of $3 million and post-judgment interest against defendants; for which they are to be held jointly and severally liable.

## I.    BACKGROUND

### A. Parties

The plaintiff Commodity Futures Trading Commission ("CFTC") ("plaintiff") is an independent federal regulatory agency tasked by Congress with overseeing and enforcing the Commodity Exchange Act ("CEA"), the CEA as Amended by the Dodd-Frank Act, and the regulations enacted thereunder ("Commission Regulations"). ECF No. 1 at ¶ 13.

Defendants Intrade The Prediction Market Limited ("Intrade") and Trade Exchange Network ("TEN") are companies organized under the laws of Ireland. ECF No. 7 at ¶¶ 14-15. In 2007, TEN deconsolidated into three distinct entities. TEN's 3d Supp. Resp. Interrog. No. 6, ECF No. 51-2. Following this deconsolidation, "which took effect on or about February 28, 2007, TEN transferred its non-sports prediction markets and technology-related intellectual property to defendant Intrade." *Id.* Following this transfer, a majority of Intrade's shareholders also held shares of TEN. ECF No. 47-1 at ¶ 47. Additionally, defendants had the same overlapping directors and officers. ECF No. 47-1 at ¶ 48. Defendants also operated from "the same premises" during the period pertinent to plaintiff's complaint. ECF No. 47-1 at ¶¶ 51, 64.

**B. Procedural History**

On November 26, 2012, plaintiff CFTC filed its three-count Complaint for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief ("Complaint") against defendants TEN and Intrade in this Court. ECF No. 1.

Count I of the Complaint alleges that during the period of September 2007 through June 25, 2012 ("the relevant period"), defendants offered, solicited, and accepted orders from U.S. customers via www.intrade.com for the trading of off-exchange binary option contracts, allowing U.S. customers to predict whether or not a certain event would occur in the future. ECF No. 1 at ¶¶ 5, 17, 19-25. These binary options included predictions regarding future crude oil prices, fluctuations in the U.S. unemployment rate, and the probability of future acts of war. *Id.* at ¶¶ 5, 20. By allowing U.S. customers to trade these binary options, the Complaint alleges, defendants violated Section 4c(b) of the CEA and Commission Regulation ("Regulation") 32.11, 17 C.F.R. § 32.11. ECF No. 1 at ¶¶ 41-43.

Count II of the Complaint alleges that TEN defied a 2005 administrative order entered against it by the CFTC ("2005 Commission Order"). *Id.* at ¶¶ 47-51. The 2005 Commission Order alleged that TEN violated Section 4c(b) of the CEA, 7 U.S.C. § 6c(b), and Regulation 32.11, by "soliciting and accepting orders from U.S. residents for commodity options not otherwise excepted or exempted from the Commission's ban on options" through its affiliated websites including intrade.com. Trade Exchange Network, Comm. Fut. L. Rep. ¶ 30135 (CFTC Sept. 29, 2005) ("2005 Commission Order"), ECF No. 47-3; ECF No. 1 ¶ 1. TEN consented to the entry of the 2005 Commission Order. 2005 Commission Order; ECF No. 47-2 ¶ 1. As part of the 2005 Commission Order, TEN agreed not to violate Section 4c(b) of the CEA and Regulation 32.11 in the future, to pay a CMP of $150,000, and to carry out additional requirements, including notifying its U.S. customers that certain contracts were off limits for trading on TEN's trading platforms via a pop-up notice. 2005 Commission Order at 3, 5. The Complaint alleges that TEN offered contracts for trade to U.S. customers that were off limits under the 2005 Commission Order, failed to provide the aforementioned pop-up notices to users of its website during the relevant period, neglected to notify the CFTC of its intent to change the individual designated to receive written requests arising from the 2005 Commission Order, and failed to designate a new representative following the prior designee's withdrawal. ECF No. 1 at ¶¶ 29-33, 47-51.

The Court granted plaintiff's Motion for Summary Judgment as to Counts I and II of the Complaint (ECF No. 47) and found that TEN and Intrade violated Section 4c(b) of the CEA and Regulation 32.11 by permitting U.S. customers to trade 5,503 option contracts involving Commission-regulated commodities during the relevant period. ECF No. 60. The Court also found that TEN violated the 2005 Commission Order by (1) allowing for US customers to trade those 5,503 option contracts, (2) failing to have blocks in place for U.S. customers on 2,027 prohibited

option contracts, (3) lifting blocks on prohibited option contracts, and (4) failing to notify the CFTC of its intent to change its U.S. representative within fourteen days of the change. ECF No. 60.

Plaintiff filed its Motion as to the Appropriate Amount of Disgorgement and Civil Monetary Penalties for Defendants' Violations of the Commodity Exchange Act and Commission Regulations. ECF No. 71. With regard to the appropriate CMP, plaintiff argued that the Court should impose a CMP, jointly and severally, of "not less than $3 [million]" against defendants. ECF No. 71 at 2.

As to the appropriate amount of disgorgement, the Court granted the parties' Joint Motion for Entry of Consent Order Regarding Distribution of Disgorgement Amount, in which they agreed to disgorge $248,334.74 of defendants' funds held in an affiliate company's bank account. ECF Nos. 87 and 88.

Plaintiff, without opposition from defendants, filed a motion to vacate the portion of the Court's Consent Order terminating the case, which the Court granted. ECF Nos. 89 and 90. Plaintiff notified the Court that defendants' appointed liquidator—Bermingham & Company—had made a complete disbursement of the disgorgement fund specified in the Court's Order and identified the proper amount for a CMP as the only remaining issue to be decided by the Court. ECF Nos. 88 and 91. This opinion resolves that issue.

## II. LEGAL STANDARD

The CEA dictates that the Court has the authority to impose on any person who has been found to have violated the CEA a CMP of (1) not more than the greater of triple the monetary gain to a person for each violation, or (2) $130,000 for each violation from October 23, 2004, through

4

October 22, 2008, and $140,000 for each violation occurring on October 23, 2008, through November 1, 2015. 7 U.S.C. § 13a-1(d)(1)(A); 17 C.F.R. § 143.8(b)(1)(ii).

The Court has the authority to impose a CMP that is appropriate to the seriousness of the violator's offense. *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999). Conduct that "violates core provisions of the CEA's regulatory system" is considered very serious. *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995) (quoting *In Re Premex*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,165 (CFTC Feb. 17, 1988)).

In addition to the seriousness of the violations, courts consider several mitigating and aggravating circumstances when determining the appropriate CMP: (1) whether the violation was an isolated mistake made "in the face of an ambiguous statutory duty or from circumstances that are unique and unforeseeable" as opposed to a violation that was made "knowingly and repeatedly . . . to gain a competitive edge," (2) if the individual actually benefitted from the violation or if the violation caused "direct harm to customers or the market," as well as (3) the individual's "post-violation cooperation with authorities, attempts to cure the violation, and/or provide restitution." *JCC*, 63 F.3d at 1571.

The CMP imposed should bear a rational relation to the violation. *CFTC v. Levy*, 541 F.3d 1102, 1112 (11th Cir. 2008). CMPs should be "sufficiently high to deter future violations, that is, to make it beneficial financially for a respondent to comply with the requirements of the [CEA] and [CFTC] regulations rather than risk violations." *In re Grossfeld*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,921 (CFTC Dec. 10, 1996), *aff'd*, 137 F.3d 1300 (11th Cir. 1998). As the CFTC has stated, CMPs "remind both the recipient of the penalty and other persons subject to the [CEA] that non-compliance carries a cost. To effect this exemplary purpose, that cost must not be too low or potential violators may be encouraged to engage in illegal conduct." *CFTC v.*

*Emerald Worldwide Holdings, Inc.*, No. CV03-8339AHM, 2005 WL 1130588 at *11 (C.D. Cal. April 19, 2005) (quoting *In re GNP Commodities, Inc.*, [1990-1992 Transfer Binder] Com. Fut. L. Rep. (CCH) ¶ 25,360 (August 11, 1992), *aff'd sub nom. CFTC v. Monieson*, 996 F.2d 852 (7th Cir. 1995)).

## III. ANALYSIS

### A. Defendants Committed Serious Violations.

The CEA defines its purpose as "serving the public interest . . . through a system of effective self-regulation of trading facilities, clearing systems, market participants, and market professionals under the oversight of the [CFTC]." 7 U.S.C. § 5(b). Defendants not only repeatedly violated the CEA, but did so in direct defiance of the 2005 Commission Order entered against TEN. Defendants' violations, therefore, severely compromised the regulatory purpose of the CEA and are serious. *In re Grossfeld*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,921 (CFTC Dec. 10, 1996), *aff'd*, 137 F.3d 1300 (11th Cir. 1998). Given that the initial $150,000 CMP entered against TEN as part of the 2005 Commission Order did not prevent defendants from continuing to violate the CEA, a substantial CMP is warranted for the purpose of maintaining the deterrence function of CMPs.


### B. The Mitigating Circumstances Put Forth by Defendants Do Not Support a Minimal CMP.

Defendants argue that their violations are the result of an ambiguous statutory duty or "unsettled law" and, therefore, do not warrant a substantial CMP. ECF No. 74 at 9-10. This argument fails because violations resulting from the statutory duty were by no means "isolated." *See JCC*, 63 F.3d at 1571 (finding that violations of the CEA committed "knowingly and repeatedly" do not serve to mitigate a defendant's culpability). Defendants allowed 1,275 U.S.

customers to trade 5,503 prohibited contracts during the relevant period. ECF No. 77 at 12. The 2005 Commission Order provided unambiguous notice to defendant TEN that offering certain binary option contracts was forbidden under the CEA and was by no means "unsettled law." ECF No. 47-3; ECF No. 71 at 18. Nevertheless, defendants traded contracts that were identical to those identified in the 2005 Commission Order. ECF No. 47-3 at ¶¶9-11. Thus, plaintiff's characterization of defendants' misconduct as "intentional" and "reckless" is accurate. ECF No. 71 at 15. Defendants' prolonged non-compliance after the CFTC notified them of their failure to abide by the 2005 Commission Order further supports this characterization. *Id.* at 16-17.

Defendants argue that the violations at issue in this matter are the result of the "unauthorized acts of a rogue director." ECF No. 74 at 10. They claim that their then-director, Mr. John Delaney, acted beyond the scope of his authority in lifting the blocks that defendants had put in place as a result of the 2005 Commission Order. *Id.* at 10. But the text of the CEA forecloses this argument by stating that "the act, omission, or failure of any official agent, or other person acting for an individual, association, partnership, corporation or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation or trust, as well as of such official, agent or other person." 7 U.S.C. § 2(a)(1) (emphasis added). Even if Mr. Delaney did exceed his authority as director, defendants are strictly liable for his actions if he was acting as their agent. *Stotler & Co. v. CFTC*, 855 F.2d 1288, 1291-92 (7th Cir. 1988). Whether or not Mr. Delaney was acting as an agent for defendants depends on "an overall assessment of the totality of the circumstances." *Id.* (quoting *Berisko v. E. Capital Corp.,* [1984-1986 Transfer Binder] Com. Fut. L. Rep. (CCH) ¶ 22,772 (October 1, 1985)). From 2003 until his death in May 2011, Mr. Delaney served as director and CEO of defendants TEN and Intrade. ECF No. 47-1 at ¶ ¶ 101-102. He executed the 2005 Offer of Settlement, wherein

defendant TEN consented to the 2005 Commission Order. ECF No. 47.1 at ¶ 19-22. An e-mail exchange between Mr. Delaney and Intrade's exchange operations manager, Mr. Wolfenden, reveals that he ordered Mr. Wolfenden to lift the trading blocks in order to facilitate trading activity on intrade.com. ECF No 47.1 at ¶¶ 125-32.The combination of these circumstances allows for the Court to find that Mr. Delaney acted as an official agent of defendants. Thus, defendants are strictly liable for his actions.

Defendants' argument that Mr. Delaney's death undermines any deterrent effect of a CMP fails. ECF No. 74 at 11. Defendants continued to violate the CEA long after the death of Mr. Delaney in May 2011. ECF No. 77 at 15. In fact, defendants violated the CEA well after they were contacted by the CFTC following Mr. Delaney's death, only refraining from offering prohibited contracts after plaintiff filed its Complaint in November 2012. *Id.* Not only do these facts effectively negate defendants' depiction of Mr. Delaney's actions as "unauthorized" and "rogue," it also underscores the necessity of imposing a substantial CMP for the sake of deterring such prolonged and brazen violations.

Defendants argue that they received at most $52,294.96 in monetary benefits as a result of their violations. ECF No. 74 at 11. But the accounting method that defendants employ fails to account for the monetary benefits that indirectly resulted from their misconduct. By soliciting customers to trade prohibited option contracts, defendants generated new business and drew additional customers to their website to trade non-prohibited option contracts. Thus, the figure that defendants have put forth as "minimal" and mitigating is incomplete. Additionally, the CFTC has stated that benefitting in any way from a violation of the CEA is more serious than potentially benefitting. *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995) (quoting *In Re Premex*, [1987-1990

Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,165 (CFTC Feb. 17, 1988)). In this instance, defendants' concession that they did benefit underscores the seriousness of their violations.

Finally, the Court does not find defendants' return of funds that rightfully belonged to U.S. customers, and to which defendants had no legal right to retain, particularly persuasive as a basis for a minimal CMP.

### C. The Facts Support a $3 Million CMP.

The CEA provides the Court with the authority to impose a penalty of $130,000 or $140,000 for each of defendants' violations, depending on the date. 7 U.S.C. § 13a-1(d)(1)(A); 17 C.F.R. § 143.8(b)(1)(ii). The Court would, therefore, be well within its power to award a CMP exceeding $700 million.[1] However, the Court is aware of defendants' ongoing liquidation and considered their potential financial shortcomings in coming to a decision. *See* ECF No. 92. The facts dictate that the prior, lesser penalty of $150,000 served as no deterrent to defendants. For the sake of maintaining the function of CMPs and upholding the regulatory purpose of the CEA and Commission Regulations, a more severe penalty is required. While the Court believes any CMP approaching $700 million would be excessive, the Court finds that defendants' repeated violations of the CEA and Commission Regulations, coupled with their brazen defiance of the 2005 Commission Order, warrant a CMP of $3 million.

### IV.    CONCLUSION

For the aforementioned reasons, the Court finds that defendants' violations of the CEA and Commission Regulations warrant a substantial CMP. Plaintiff's motion for an assessment of a $3

---

[1] This penalty could range from $715,390,000 (5,503 violations multiplied by $130,000) to $770,420,000 (5,503 violations multiplied by $140,000) depending on the chronology of the violations.

million CMP, plus post-judgment interest, for which defendants are to be held jointly and severally liable, will be **GRANTED**.

A separate order consistent with this opinion shall issue this date.


Date: July _5_ , 2018

Royce C. Lamberth
United States District Judge